STATE, Plaintiff-Respondent, v. HARRELL,
Defendant-Appellant.

Court of Appeals, District I

*No. 77–553–CR. Submitted on briefs August 8, 1978.—
Decided August 31, 1978.*
(Also reported in 270 N.W.2d 428.)

332

For the appellant the cause was submitted on the briefs of *John J. Carter* and *Carter & Finn*, S.C., of Milwaukee.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general and *David J. Becker,* assistant attorney general.

Before DECKER, C.J., CANNON, P.J., and MOSER, J.

DECKER, C.J. This is a double jeopardy case. It involves that narrow segment of former jeopardy principles applicable to retrial of a criminal case in which the first trial was terminated by an order granting defendant's motion for a mistrial.

The defendant was charged in a criminal complaint with having sexual intercourse with a girl fifteen years of age contrary to sec. 944.10(2), Stats. A jury trial of the charge was commenced September 26, 1977. On September 28, 1977, Judge Christ T. Seraphim granted the defendant's motion for a mistrial. The case was reassigned to Judge Landry who heard and denied defendant's motion to dismiss on double jeopardy grounds. The circuit judge found that the conduct of Judge Seraphim constituted judicial overreaching but that such conduct was not intended to provoke defendant's motion for a mistrial. For that reason, Judge Landry found that retrial of the charges was not barred by the former jeopardy provisions of the United States and Wisconsin Constitutions.

The defendant contends that judicial overreaching which invokes a double jeopardy bar to reprosecution need not be intended to provoke a defendant's mistrial request but rather need only be sufficient to justify a mistrial. Nevertheless, in elaboration of that argument, defendant compromises that contention by describing the circumstances of this case as judicial conduct *designed* either to avoid an acquittal or to insure a conviction and presumably intended to prejudice the defendant's prospects for acquittal. We do not agree with the contentions of the defendant.

The fifth amendment double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment to the United States Constitution. *Benton v. Maryland,* 395 U.S. 784 (1969). Because the former jeopardy provisions of the United States and Wisconsin Constitutions[1] are "identical in scope and purpose,"[2] the Wisconsin Supreme Court has accepted de-

---

[1] U.S. Const. amend. V; Wis. Const. art I, §8.

[2] *State v. Elkinton,* 56 Wis.2d 497, 502, 202 N.W.2d 28 (1972).

cisions of the United States Supreme Court, where applicable, as controlling the double jeopardy provisions of both constitutions. *Day v. State,* 76 Wis.2d 588, 591, 251 N.W.2d 811 (1977) ; *State v. Calhoun,* 67 Wis.2d 204, 220, 226 N.W.2d 504 (1975).

Relying upon *Abney v. United States,* 431 U.S. 651 (1977), the state has conceded that the order of the circuit court is appealable.

"The Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings. *United States v. Jorn,* 400 U.S. 470, 479 (1971)."

Former jeopardy provisions represent the idea that the "heavy personal strain" of repeated attempts to convict an individual by the utilization of the power and resources of government, thereby subjecting him to the hazards of delay, embarrassment, expense, ordeal and anxiety should not be allowed. *Green v. United States,* 355 U.S. 184, 187 (1957).

Reprosecution, where the first trial is terminated by a mistrial order made without the defendant's consent, is permitted if "there is a manifest necessity for [it] or the ends of public justice would otherwise be defeated." *United States v. Perez,* 9 Wheat. 579, 580 (1824). Circumstances which delay a trial or prevent a verdict are embraced within the manifest necessity standard. Mistrial and reprosecution serve the ends of public justice when the parties are not required to complete a trial which would result in an easily upset result. The standards of *Perez* are to be balanced by the defendant's right to completion of his trial before the particular tribunal at hand. *United States v. Dinitz,* 424 U.S. 600, 608 (1976). Great weight is given to the defendant's right to complete the trial and avoid delay and to preclude

the postjeopardy opportunity to the prosecution to strengthen its case. *Illinois v. Somerville,* 410 U.S. 458, 469 (1973).

The general rule is that when the defendant requests or consents to the mistrial he waives the right to completion of the trial and, ordinarily, the double jeopardy clause does not bar reprosecution. *United States v. Dinitz, supra,* at 607; *United States v. Jorn,* 400 U.S. 470, 485 (1971). When prosecutorial or judicial "overreaching" prompts the defendant's mistrial request an exception to the general rule is applicable. When overreaching occurs, the defendant's right to completion of the trial without delay is compromised by the prospect of conviction and lengthy postconviction review with the prospect of reprosecution. In *United States v. Jorn, supra,* a rule was announced that had been predicted in *United States v. Tateo,* 377 U.S. 463 (1964). The double jeopardy clause was held to bar reprosecution when a mistrial, although requested by the defendant, was justified by prosecutorial or judicial overreaching intended to prompt the request.

In the context of the double jeopardy clause we define judicial overreaching as conduct that is egregious rather than merely error. Conduct that is intended to prompt a mistrial request by the defendant or is intended to harass or prejudice the defendant characterizes judicial overreaching. The kinds of judicial misconduct which lead to defendant's mistrial request and bars reprosecution are seeded in a state of mind of the judge which intends to frustrate the defendant's valued right to but one trial and the avoidance of the delay, expense, anxiety, embarrassment and order of retrial. Allowing mere error, prosecutorial or judicial, to bar retrial "would fail to adequately take into account the public interest in

prosecuting and punishing individuals guilty of crime."
*Muller v. State,* 478 P.2d 822, 827 (Alaska 1971). An
intentional act of prosecutorial misconduct has char-
acterized prosecutorial overreaching. *Gori v. United
States,* 367 U.S. 364, 369 (1961) ; *United States v. Ro-
mano,* 482 F.2d 1183, 1188 (5th Cir. 1973), *cert. denied,*
414 U.S. 1129 (1973) ; *United States ex rel. Montgomery
v. Brierly,* 414 F.2d 552, 557 (3rd Cir. 1969), *cert. denied,*
399 U.S. 912 (1970) ; *State ·v. Ballinger,* 19 Ariz. App.
32, 504 P.2d 955, 959 (1973) ; *People v. Hathcock,* 8 Cal.
3d 599, 105 Cal. Rptr. 540, 504 P.2d 476, 483 (1973) ;
*Commonwealth ex rel. Montgomery v. Myers,* 422 Pa.
180, 220 A.2d 859, 865 (1966) ; *Commonwealth v. War-
field,* 424 Pa. 555, 227 A.2d 177, 180 (1967) ; *City of
Tucson v. Valencia,* 21 Ariz. App. 148, 517 P.2d 106, 110
(1973) ; *United States v. Mandel,* 431 F.Supp. 90, 97
(D.C. Md. 1977) ; *United States v. Buzzard,* 540 F.2d
1383, 1387 (10th Cir. 1976) ; *United States v. Harvey,*
377 A.2d 411, 416 (D.C. Cir. 1977) ; *Piesik v. State,*
572 P.2d 94, 97 (Alaska 1977) ; *White v. State,* 523 P.2d
428, 530 (Alaska 1974) ; *State v. Marquez,* 113 Ariz. 540,
558 P.2d 692, 695 (1976) ; *State v. Ware,* 27 Ariz. App.
645, 557 P.2d 1077, 1088 (1976) ; *State v. Pulawa,* 569
P.2d 900, 903–4 (Hawaii 1977) ; *State v. Jackson,* 33 Or.
App. 139, 575 P.2d 1001, 1003 (1978) ; *State v. Shuler,*
293 N.C. 34, 235 S.E.2d 226, 233 (1977) ; *State v. Wesley,*
347 So.2d 217, 219 (La. 1977).

A minority of other courts have held that gross negli-
gence of a prosecutor or a failure to satisfy professional
standards constitutes prosecutorial overreaching. *United
States v. Crouch,* 566 F.2d 1311 (5th Cir. 1978) ; *United
States v. Kennedy,* 548 F.2d 608 (5th Cir. 1977) ; *Com-
monwealth v. Bolden,* 373 A.2d 90 (Pa. 1977) ; *People v.
Baca,* 562 P.2d 411 (Colo. 1977) ; *People v. Collins,* 48
Ill. App.3d 643, 362 N.E.2d 1118 (1977) ; *Thompson v.
Maryland,* 38 Md. App. 499, 381 A.2d 704 (1978).

The burden is on the defendant to establish that prosecutorial or judicial conduct constitutes overreaching and that such conduct is intentional. *United States v. Beasley,* 479 F.2d 1124, 1127 (5th Cir. 1973), *cert. denied* 414 U.S. 924 (1973).

As in the case of prosecutorial misconduct, judicial misconduct intended to prompt a defendant's mistrial request or intended to harass or prejudice him is required if the double jeopardy clause is to bar reprosecution. *United States v. Dinitz, supra,* at 611. In *United States v. Lee,* 432 U.S. 23, 33, 34 (1977), the United States Supreme Court concluded:

"It follows under *Dinitz* that there was no double jeopardy barrier to petitioner's retrial unless the judicial or prosecutorial error that prompted petitioner's motion was 'intended to provoke' the motion or was otherwise 'motivated by bad faith or undertaken to harass or prejudice' petitioner."

The key words are "intended" and "motivated" in the first two instances and "undertaken to harass or prejudice" in the third instance. All of the situations are characterized by intentional conduct.

Defendant relies upon decisions of federal courts of appeal to sustain his contention that intentional judicial misconduct is not required to constitute judicial overreaching. In *United States v. Kessler,* 530 F.2d 1246, 1256 (5th Cir. 1976), the court cited *United States v. Beasley, supra,* as authority for the assertion that prosecutorial misconduct resulting from gross negligence would raise the double jeopardy bar to reprosecution. In *Beasley, Wade v. Hunter,* 336 U.S. 684 (1949), is cited as authority for the same assertion. A reading of *Wade v. Hunter* reveals no reference to gross negligence.

In *Kessler* the court specifically found that the introduction of inadmissible hearsay declarations as a founda-

tion for introduction of an automatic rifle that the prosecutor knew was false evidence was prosecutorial misconduct that caused serious prejudice to the defendant's rights to a fair trial. The circumstance was described as follows:

"Such *intentional* misconduct is 'prosecutorial overreaching' and is one of the 'type[s] of oppressive practices at which the double-jeopardy prohibition is aimed.'" pp. 1257–8. (Emphasis supplied.)

Although the opinion in *United States v. Martin*, 561 F.2d 135 (8th Cir. 1977), refers to prosecutorial misconduct as gross negligence, it specifically found intentional misconduct.

If the government's actions in reading this irrelevant and highly prejudicial testimony to the jury were not intentionally designed to provoke a mistrial request, at a minimum they constitute gross negligence. *It can best be described as prosecutorial error undertaken to harass or prejudice the defendant—prosecutorial overreaching."* p. 140 (Emphasis supplied.)

The dissenting opinion in *Martin* expressed fear that the majority did not require intentional misconduct to invoke the double jeopardy clause; however, it is apparent that the majority did find intentional misconduct on the part of the prosecutor.[3]

*Kessler* also cited *United States v. Wilson*, 534 F.2d 76 (6th Cir. 1976), in support of the assertion that grossly negligent misconduct of the prosecutor constitutes overreaching without a need for intentional misconduct. We find no such reference in *Wilson*, but to the contrary a footnote observation that the *Dinitz* opinion is unclear as to whether gross negligence on the part of the judge or prosecutor will suffice to constitute over-

---

[3] In *United States v. Weaver*, 565 F.2d 129 (8th Cir. 1977), the court made no mention of gross negligence as a basis for prosecutorial overreaching.

reaching. We are unable to find a lack of clarity in that respect.

We have reviewed the entire record in this case with particular attention to the circumstances detailed in the appellant's brief and appendix. When considering double jeopardy clause application, the United States Supreme Court has observed that a "criminal trial is, even in the best of circumstances, a complicated affair to manage."[4] Long experience as trial judges leads us to find the impact of that statement not only in its accuracy but also in its understatement. The record is replete with the trial judge's accusations that the defendant's attorney was engaged in dilatory tactics, excessive motions, twisting the facts and not seeking the truth. All of the foregoing subjects and the colloquies in which they were discussed were out of the presence of the jury.

The issue to which we are directed in this review is whether the defendant should be reprosecuted, not whether the conduct of the trial judge or trial counsel should be vindicated.

From our reading of the record, we conclude that the trial was proceeding at an unusually slow pace, and we can understand the trial judge's expressed concern for the flow of cases through the overburdened trial courts. Nevertheless, we cannot find from a cold typewritten record that the conduct of counsel was reprehensible. We believe the trial judge was severe in his assessment of counsel's conduct in the light of the record wherein it appears that counsel at all times was courteous to the court.

On one occasion the trial judge, in response to a request by defense counsel for the reason for the judge's evidentiary ruling, commented in the presence of the jury, that the girls who were the principal witnesses

---

[4] *United States v. Jorn, supra,* at 479.

against the defendant were not on trial. The comment was pertinent and proper. *Bowers v. State,* 53 Wis.2d 441, 445, 192 N.W.2d 861 (1972); *State v. Rice,* 38 Wis.2d 344, 359, 156 N.W.2d 409 (1968). On another occasion the trial judge, in the jury's presence, reproved counsel for the nature of his cross-examination.

In a hearing on a pretrial motion some months before the trial, the trial judge characterized the defendant as a lying and evasive witness. The record discloses that the trial judge did not remember that characterization until it was brought to his attention by counsel for the defendant when motions were made just before the commencement of the trial. It is unrelated to the conduct of the judge at trial.

At various times and in the jury's presence, the trial judge commented upon the confusion (and thus the credibility) of youthful witnesses. In what the judge described as attempts to eliminate confusion, he asked leading and suggestive questions. At one time he decried the delay in the proceedings.

The combination of the statements described and others less important justified the mistrial order. However, we fail to discover in the events an intention by the trial judge to provoke a mistrial or conduct motivated by bad faith or intended to harass or prejudice the defendant. Although we have weighed heavily the defendant's right to avoid the resultant delay, we believe the interest of the public in prosecuting persons accused of crime is not outweighed and must be fulfilled by a full trial on the merits of this charge.

*By the Court.*—Order affirmed.