STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Roy W. COPENING, a/k/a Amos Wade, Defendant-Appellant.

Supreme Court

*No. 79–246–CR.  Argued November 25, 1980.—Decided March 31, 1981.*

(Also reported in 303 N.W.2d 821.)

For the petitioner the cause was argued by *Jerome S. Schmidt*, assistant attorney general, with whom on the briefs was *Bronson C. La Follette*, attorney general.

For the appellant there was a brief and oral argument by *William J. Tyroler*, assistant state public defender.

HEFFERNAN, J.   The defendant, Roy W. Copening, was charged in the Circuit Court for Kenosha County with conspiracy to commit theft by fraud, in violation of secs. 943.20 (1) (d) and (3) (b) and 939.31, Stats., by making false representations to banks. Upon the motion of the defendant, the trial court declared a mistrial. Subsequently, the defendant moved for dismissal of the charges because the scheduled retrial would place him again in jeopardy for the same offense. Although the defendant recognized that, ordinarily, a declaration of a mistrial upon the motion of a defendant does not bar retrial, he asserted that the facts here came within a narrow exception to that usual rule. The defendant

contended that he was obliged to move for mistrial because of prosecutorial overreaching and, hence, was entitled to be discharged. The trial court denied the motion for dismissal; and the defendant was reprosecuted, found guilty of the charged crime, and sentenced to four years in the Wisconsin State Prison.

On appeal, the court of appeals reversed the judgment of conviction and held, contrary to the determination of the trial court, that the conduct of the prosecutor which induced the defendant's motion for mistrial constituted overreaching in that it was intended to prejudice the defendant.[1] It accordingly concluded that the double jeopardy clause of the United States Constitution and the analogous clause of the Wisconsin Constitution barred reprosecution.[2] The state has petitioned for review, contending that the court of appeals erred in its conclusion that the prosecutor's action in this case constituted prosecutorial overreaching. We hold that the court of appeals erred in its decision and accordingly reverse.

The record shows that the first jury trial commenced on May 30, 1978. Twice during the proceedings on May 31, 1978, the defendant moved for a mistrial. The second motion was granted. It appears that, in the course of the state's case on May 30, 1978, two witnesses, bank employees, testified in respect to transactions at separate banks. At the commencement of proceedings on May 31, 1978, the second day of the trial, the defendant moved for a mistrial because the prosecutor had failed to comply with the provisions of sec. 971.24, Stats., in that prior statements of these state witnesses in possession of the prosecution were not turned over to the defense prior to their direct testimony. Sec. 971.24(1) provides:

---

[1] *State of Wisconsin v. Copening*, Unpub. Op. January 10, 1980.

[2] U. S. Const., Amend. V; Wis. Const., Art. I, sec. 8.

"At the trial before a witness other than the defendant testifies, written or phonographically recorded statements of the witness, if any, shall be given to the other party in the absence of the jury. For cause, the court may order the production of such statements prior to trial."

The court denied the mistrial motion. It agreed with defense counsel's contention that the prosecution's failure to comply with the statute was error because its explicit purpose was to afford opposition counsel the opportunity to challenge inconsistencies between trial testimony and earlier statements. Under the circumstances, the court concluded, however, that the error was not prejudicial and that it appeared to be an oversight. Moreover, the prior statement of one witness appeared to be consistent with her testimony, and the other document did not appear to be a statement as contemplated in sec. 971.24(1), Stats. The court reasoned that, because the prosecutor ultimately provided the defendant with the documents, although not *sua sponte* and prior to testimony as required, the court could remedy the error by offering defense counsel the opportunity to recall the witnesses for further cross-examination.

In the colloquy on this matter, the court noted, however, that, had the prosecutor not appropriately supplied the statements until after trial, mistrial or the grant of a new trial would be necessary. The prosecutor claimed the statute was not mandatory and that he was not required to *sua sponte* turn over the statements prior to examining a witness. He stated that the practice in Kenosha county did not require such production of statements prior to direct examination and that, in any event, defense counsel must request the statements. The trial court admonished the prosecutor that such was not the practice in Kenosha county and that the de-

fendant was not required to request the statement. The trial court said:

"It's your duty to produce them. Absolutely, unqualifiedly, your duty. I don't care how you read the statutes, you are the one that is responsible to do that."

On this appeal the attorney general does not contend that the prosecuting attorney correctly stated the requirements of sec. 971.24(1), Stats. Rather, there is complete acquiescence in the trial court's determination that it was the responsibility of the prosecutor *sua sponte* to turn over prior statements before commencing direct examination.

Despite these extensive warnings of the trial court, the prosecutor committed the identical error later on that very day. The state called Officer Heroux, a detective on the police force of the city of Kenosha. He was questioned about his investigation of the alleged check-passing scheme and his first meeting with the defendant. Detective Heroux identified the defendant in court as being a suspect to whom he had spoken during the course of the investigation. When the prosecutor completed his direct examination of the officer, defense counsel asked to approach the bench, and a conference was there held. The court then stated, "Let the record show [defense] counsel was just handed copies of the witness' police reports." Out of the presence of the jury, another extended reported colloquy was held, which resulted in the trial court's grant of a mistrial. This interchange developed the fact that the prosecutor had prior written statements of Officer Heroux and that they were not handed over to the defense counsel until after direct-examination was completed. The court reemphasized its position, stated earlier in the day, that written statements were required to be produced before

the witness said one word on the stand. The prosecutor, Robert Zapf, stated that the only reason he called the officer was to avoid having him called as a defense witness. The following then ensued:

"*The Court:* I don't care what your intent [in calling the officer] was.
"*Mr. Zapf:* So declare a mistrial if the Court sees fit there has been prejudice here.
"*The Court:* This attitude, Mr. Zapf, I am going to take that under advisement about five minutes so I can count to about a hundred."

Without permitting further explanation at that point, the court declared a recess. After the recess, the court out of the presence of the jury asked Zapf whether he had any explanation why the statements were not turned over to the defendant prior to Officer Heroux' testimony. Zapf argued, as he did before, that he felt that courtroom procedures in Kenosha county did not require the production of police reports and that there was nothing in the record to show that the witness relied on those reports. The court then inquired:

"Mr. Zapf . . . did you intentionally not turn those reports over to the defense counsel when this witness went on the stand, one simple question, yes or no."

After a number of non-responsive statements by the prosecutor, the court interrupted, saying:

"*The Court:* It was intended you give it at the end of the witness' direct, is that correct?"
"*Mr. Zapf:* Right . . . ."

Finally, Zapf stated that he did not turn over the statement of the police officer because he had only one set of the police reports in the file. This was an apparent explanation of the fact that he needed the report during his own direct examination. He then said:

"I gave them to counsel with the proviso that upon his completion of cross examination and review of them, they be returned to the State's file."

The court then asked whether there were any motions. Alfred Decker, defense counsel, then moved for mistrial. The court then reread the provisions of sec. 971.24, Stats., and pointed out:

"The statute . . . says that it must be delivered prior to the witness testifying. Ordinarily the Court would not, as we did not this morning, grant a mistrial on the basis that they were not produced where we thought it was an oversight and we thought that there was harmless error and we thought that there was no prejudice to the defendant. But with this record as a whole, between the fact that they were not delivered yesterday and we took the matter up this morning, and the fact that they were not delivered again this afternoon, and we find that that was an intentional act . . . and that when we confronted counsel for the State with it, his reaction was why don't you grant a mistrial.

"And, based upon that record, the Court is going to do that exact thing. . . . The motion for mistrial is granted."

The court then again made the finding that the prosecutor failed to comply with the provisions of the statute. Zapf continued to protest. He resisted the granting of the mistrial, saying that he would accept the responsibility but that he, Zapf, should be punished and not the system of criminal justice. The court then pointed out:

"[W]e have no way, no way of requiring you to abide, comply with the law other than [to] do this. This is the only thing we can do. This is the unfortunate thing in the law that when the State gets out of line and fails to comply with the law themselves, the only choice the Court has is to dismiss the case and inconvenience twenty some civilian witnesses that have been brought into this courtroom to testify so that they will have to come back again."

The record shows the court's grant of a mistrial was in contemplation of retrial, which was promptly scheduled. Shortly after that rescheduling, the defendant moved to dismiss the information on the ground that the mistrial was the result of prosecutorial overreaching by persistent noncompliance with sec. 971.24(1), Stats., and therefore the double jeopardy clause of both the United States and Wisconsin Constitutions barred retrial.

An extensive hearing was held on the motion to dismiss the charges. The court found that at the time the prosecutor violated sec. 971.24(1), Stats., in respect to the second set of witnesses, the state's case was very strong. Thus, the court reasoned the prosecutor could not have been provoking a mistrial out of fear of acquittal, and the court pointed out that it had not granted the mistrial out of any desire to favor the state. The trial court concluded that, where the mistrial was on the defendant's motion, only those mistrials induced to avoid an acquittal would bar reprosecution.

The motion to dismiss the information was denied, trial was had, and the defendant was convicted and sentenced to a term of four years at the Wisconsin State Prison. It is this conviction which the court of appeals reversed, concluding that reprosecution was barred because the mistrial was the result of prosecutorial overreaching.

On this review, then, we are confronted with a situation in which the prosecutor intentionally withheld a prior witness statement from the defense contrary to the dictates of the statute until after the completion of the state's examination and despite the warnings of the court earlier that very day. It was this conduct which induced the defendant's motion for mistrial.

The question for determination, then, is whether this conduct which prompted a mistrial constitutes prosecu-

torial "overreaching" that will bar a retrial. Ordinarily, where mistrial is granted on the motion of the defendant, it is presumed that defendant has made the election to abandon the valuable right of being tried before a single tribunal. It is asserted here, however, that a different rule applies when the mistrial motion is induced by prosecutorial "overreaching." In such a case, it is asserted, the constitutional prohibition against double jeopardy will bar retrial. This assertion in turn raises a major distinction which controls the disposition of double jeopardy claims after a mistrial has been declared.

The distinction is based on whether the mistrial, on one hand, was granted without the request or consent of the defendant, *e.g.*, by the trial court, *sua sponte*, or as the result of the prosecutor's motion over the objection of the defense, or, on the other hand, whether the mistrial was granted upon the defendant's motion or with his consent. The major reason for the distinction, according to United States Supreme Court doctrine, is that, where the mistrial is granted on the defendant's motion or with his consent, the defendant has "primary control over the course to be followed in the event of [prejudicial judicial or prosecutorial] error." *United States v. Dinitz,* 424 U.S. 600, 609 (1976).

The basic policies underlying the double jeopardy bar have been stated in *Green v. United States,* 355 U.S. 184, 187–88 (1957). Therein the court said:

"[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

As a matter of policy, the United States Supreme Court has concluded that these underlying values protected by the double jeopardy bar are satisfied when the defendant, by his own motion for mistrial or by consenting to a motion for mistrial, exercises control over the mistrial decision. Because by definition mistrial ordinarily implicitly means retrial, the defendant by his own motion has exercised the option to be tried by another tribunal.

Nevertheless, it is not infrequent that a trial court discerns *sua sponte* the necessity for a mistrial. When the trial court on its own volition orders a mistrial without the defendant's request or consent, or even over defendant's objection, the Fifth Amendment may, but does not necessarily, bar reprosecution. This situation is viewed in sharp distinction from that which ordinarily results from a mistrial on the defendant's motion, where, as we have stated above, the defendant has consciously elected to have a case tried in another forum. However, where the impetus for the mistrial comes from the court, the defendant without his acquiescence loses his right to be tried in the original forum. Thus, reprosecution will be barred unless there is a "manifest necessity" for the mistrial. *United States v. Perez*, 22 U.S. (9 Wheaton) 579 (1824). In that case, Justice Story enunciated what has come to be called the "manifest necessity" test. He said:

". . . Courts of justice [may] discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." (P. 580)

The trial court's exercise of discretion in making this *sua sponte* determination is ordinarily entitled to considerable deference on review by an appellate court.

*Gori v. United States,* 367 U.S. 364 (1961). This is because the usual prejudicial development resulting in mistrial is of a type whose effect is best assessed by the trial court's first-hand observation. It is appropriately left to the exercise of trial court discretion; and on review the test is whether, under all the facts and circumstances, giving deference to the trial court's first-hand knowledge, it was reasonable to grant a mistrial under the "manifest necessity" rule. It has been pointed out that a stricter standard might deter trial courts from granting mistrials, even when under the circumstance it appears appropriate, because of the fear that an appellate court might too readily disagree and reverse, which result would bar retrial. *Arizona v. Washington,* 434 U.S. 497 (1978).[3]

The fact, however, that considerable deference normally is to be given to the trial court's determination of "manifest necessity" does not mean that this determination is not of great importance. The defendant has a valued interest in obtaining a verdict from the first tribunal before which he appears. Thus, the trial court's exercise of discretion must be scrupulous and a mistrial, absent a motion by the defendant, should only be granted in the event of "manifest necessity" or where required by the ends of public justice. *United States v. Jorn,* 400 U.S. 470 (1971), reiterating the admonition of *Perez, supra. See* also, *Illinois v. Somerville,* 410 U.S. 458 (1973). Thus, whether retrial after a mistrial declared without the defendant's request or consent is

---

[3] It should be noted that *State v. Calhoun,* 67 Wis.2d 204, 210, 226 N.W.2d 504 (1975), appears to apply the abuse of discretion and "manifest necessity" test to mistrials on motion of the defendant. If so read, *Calhoun* is in error. That test is appropriate only where there is a *sua sponte* declaration of mistrial by the court. To the extent that *Calhoun* can be read to apply that test to other mistrial situations we expressly disavow it.

permissible under the double jeopardy clause depends on "whether 'there [was] a manifest necessity for the [mistrial],' or the ends of public justice would otherwise [have been] defeated." *United States v. Dinitz, supra* at 607. Accordingly, if these tests are not met, the bar of double jeopardy applies, and the defendant may not be retried. *See* also, *State v. Kendall,* 94 Wis.2d 63, 72, 287 N.W.2d 758 (1980) ; *State v. Harrell,* 85 Wis.2d 331, 334, 270 N.W.2d 428 (Ct. App. 1978). Most recently, the United States Supreme Court has stated that the "manifest necessity" test requires not just necessity but a "high degree" thereof and precludes a trial court from ordering a mistrial irrationally or irresponsibly. The supreme court also emphasized that trial courts considering a mistrial declaration *sua sponte* or on the motion of the prosecutor should consider other alternatives before depriving a defendant of the valued right to keep his confrontation with society before the original tribunal. *Arizona v. Washington,* 434 U.S. 497 (1978). As indicated above, the same rationale and analysis applies where the mistrial is ordered on the motion of the prosecutor over the defendant's objection. Scrutiny of the trial court's decision is especially strict, where the mistrial motion is made because of the government's unpreparedness for trial (*Downum v. United States,* 372 U.S. 734 (1963)) or where the prosecutor is using superior resources of the state to achieve a tactical advantage over a defendant or to harass him *(Arizona v. Washington, supra).*

Different standards apply, however, where the mistrial is granted at the defendant's motion or with his consent. The United States Supreme Court at one time viewed the determining factor as being whether the mistrial was granted in the "interests" of the defendant. *Gori v. United States, supra* p. 368. If that test were met, then reprosecution was permitted. Subsequently,

this rule has been modified; and under the current state of United States Supreme Court doctrine, a defendant's own motion for mistrial is assumed to remove any barrier to reprosecution, even when necessitated by prosecutorial or judicial error, so long as that error does not rise to the level of "overreaching." *See, United States v. Tateo,* 377 U.S. 463, 468 (1964); *United States v. Jorn, supra* at 485; *State v. Jenich,* 94 Wis.2d 74, 92, 288 N.W.2d 114 (1980); *State v. Harrell, supra* at 385; *Day v. State,* 76 Wis.2d 588, 592, 251 N.W.2d 811 (1977); *State v. Calhoun,* 67 Wis.2d 204, 224, 226 N.W.2d 504 (1975). This is because, when the defendant moves for, or consents to, a mistrial, the defendant, and not the court, exercises primary control over the course to be followed in the event of prejudicial judicial or prosecutorial error.[4] There is, however, an exception to the rule that, when the defendant moves for a mistrial, reprosecution may automatically follow.

Although the exception has been stated, it is not very well explained in the cases of the United States Supreme Court. Basically, however, as *Tateo* and *Jorn, supra,* point out, the exception applies where the prejudicial error involves prosecutorial or judicial "overreaching" as opposed to ordinary error. Although this exception has been often repeated, it has only been in dictum, for no case has been brought to our attention or discussed by commentators in which the Supreme Court has ever actually held that prosecutorial or judi-

---

[4] Thus, the United States Supreme Court has indicated that, even though prejudicial judicial or prosecutorial error may create a "Hobson's Choice" for the defendant between (1) taking a chance with a verdict from the first tribunal despite the prejudicial error, or (2) moving for mistrial and thus being subject to the stress of reprosecution, the fact that the defendant controls this important and difficult choice generally protects those interests safeguarded by the double jeopardy clause. *United States v. Dinitz, supra,* 424 US at 608–10.

cial overreaching has occurred and would, therefore, be a bar to reprosecution. It is this "overreaching" exception, however, upon which the defendant relies in the instant case. It is his position that the patent error of the prosecutor in intentionally and persistently failing to turn over witness statements, as required by the statute, constituted prosecutorial overreaching.

In *State v. Harrell*, 85 Wis.2d 331, 270 N.W.2d 428 (Ct. App. 1978), the court of appeals defined judicial overreaching:

". . . as conduct that is egregious rather than merely error. Conduct that is intended to prompt a mistrial request by the defendant or is intended to harass or prejudice the defendant characterizes judicial overreaching." (P. 335)

We would have little doubt that the error committed by the prosecutor in the instant case—the adamant and unreasonable refusal to follow the plain words of the statute and the recently given admonitions of the trial court—was egregious in the dictionary sense that egregious means "flagrant" or "conspicuous for bad quality." But we doubt that the term, "egregious," is a sufficient or appropriate description of what is meant by judicial or prosecutorial "overreaching." The balance of the court of appeals' definition in *Harrell* is descriptive and may well characterize, in part, instances of judicial or prosecutorial overreaching, but we conclude it does not comport with what the United States Supreme Court appears to mean by the term, "overreaching."

The United States Supreme Court cases appear to be keyed more to the manipulative motives of the prosecutor or of the judge than to the egregiousness of the conduct. Moreover, although whether the conduct of the judge or prosecutor is intentional is an important ingredient of overreaching, it appears that by and large

it must be with an intent to accomplish a specific prohibited purpose in derogation of the defendant's right to be tried but once. The first articulation apparently came in *Jorn, supra,* p. 485 n. 12. There the court stated that, where the defendant moves for mistrial, even when due to prosecutorial or judicial error, retrial is not barred, but it suggested:

"Conversely, where a defendant's mistrial motion is necessitated by judicial or prosecutorial impropriety designed to avoid an acquittal, reprosecution might well be barred."

Again in dicta, the court in *United States v. Dinitz, supra* at 611, said:

"The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by judge or prosecutor,' *United States v. Jorn, supra,* at 485, threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant."

It appears from these statements that the supreme court would require the following elements in order to bar retrial of a defendant who moved for and obtained mistrial due to alleged prosecutorial overreaching: (1) The prosecutor's action must be intentional in the sense of a culpable state of mind in the nature of an awareness that his activity would be prejudicial to the defendant; *and* (2) the prosecutor's action was designed either to create another chance to convict, that is, to provoke a mistrial in order to get another "kick at the cat" because the first trial is going badly, or to prejudice the defendant's rights to successfully complete the criminal confrontation at the first trial, *i.e.,* to harass

him by successive prosecutions. Therefore, to constitute prosecutorial overreaching, the conduct of Prosecutor Zapf—the conduct which induced the defendant's motion for mistrial—must satisfy each of these elements.[5]

The mistrial in this case clearly falls into the category of a mistrial granted at the motion of, or at least with the consent of, the defendant. It is also true that the court, not the defendant, on the occasion of the first day's noncompliance with the delivery of witness statements, first commented on the possibility of mistrial as a remedy. It then went on to express its view that a less drastic curative solution appeared to be possible and suggested that recalling witnesses for further cross-examination would be sufficient. In addition, the trial court made the specific finding that the defendant was not prejudiced by the original prosecutorial lapse.

The origin of, and motivation for, the second motion for mistrial, which was granted, is more ambiguous. The background for the eventual mistrial is to be found in the colloquy after the prosecutor's second lapse. During that colloquy, the court expressed its irritation at the prosecutor's persistent failure to provide the defense with the witnesses' statements prior to direct examination. After the prosecutor gave his reasons for the failure to produce the statements and after the court stated that these reasons were insufficient, the court, turning apparently to the defense counsel, said, "Do you

---

[5] There is also the principle stated in *Green, supra,* that the state should not be allowed repeated attempts to convict a defendant because of the harassment, anxiety, and expense to which defendant will be subject as the result of such reprosecutions. An intentional provocation of a mistrial—where the purpose of retrial is to harass the defendant—may well prohibit retrial. Nothing in this record even hints at prosecutorial intent to harass by retrial. At most, the intent was to deliberately withhold the statements from the defense prior to witness testimony.

have any motions?" The response to this was defense counsel's motion for mistrial. It may well be that the motion was prompted by the court's approach to the problem and also by the gratuitous statement of the prosecutor, "So declare a mistrial."

There is no doubt, however, that the mistrial was at least with the defense counsel's consent.[6] Accordingly, the ordinary rule applies—that where there is a motion by the defendant for mistrial or the defendant consents to the mistrial, any barrier to reprosecution is removed, even if the defendant's motion is necessitated by prosecutorial or judicial error. This means, contrary to the assertion of the state in its briefs, the propriety of the ordering of the mistrial is not a subject for appellate review. Inquiry into the trial court's exercise of the discretion to grant a mistrial is necessary only when the defendant has not moved for, or has not consented to, the mistrial. If, however, under the standards we have already discussed in this opinion, the prosecutor's conduct constituted "overreaching," the intimation of the dicta of *Jorn, supra, Dinitz, supra,* reviewed in *Lee v. United States,* 432 U.S. 23, 32–33 (1977), is that reprosecution is barred, and a review for that purpose is appropriate.

A review of the record leads us to the conclusion that, although under the circumstances the prosecutor's error was inexcusable, it did not constitute prosecutorial "overreaching."

---

[6] The record shows that the prosecutor opposed the motion for mistrial, and contended that if the court considered his conduct culpable, he personally should be punished, but not the public or system of justice, which would suffer as the result of a mistrial. On the face of the record, then, it appears that the prosecutor did not intend by his conduct to subject the defendant to the harassment of another trial.

The initial failure of the prosecutor to comply with sec. 971.24(1), Stats., and the initial motion for mistrial prompted an extensive colloquy between the court and counsel, in which the court concluded that the prosecutor's lapse was not intentional but was an oversight. There is nothing in the record in respect to the first violation of the statute that supports any inference that the prosecutor's conduct was intentional. At the worst, this first violation of the statutory standards was prosecutorial behavior based on an apparent good faith, although completely erroneous, reading of the statute. Clearly, the first incident in itself did not constitute "overreaching." The second violation, after the court had earlier admonished the prosecutor and clearly explained the meaning of the statute and the importance of prosecutorial compliance with it, presents a closer question. It was at this juncture, following the failure to turn over the statement of Officer Heroux, that Zapf impetuously stated, "So declare a mistrial if the Court sees fit there has been prejudice here." Subsequently, the trial court expressly found that the prosecutor "intended" to do the physical act of withholding the statement until after the witness testified. The record, however, is devoid of any explicit evidence of bad faith prosecutorial or manipulative motivation, and the trial court made no finding that the prosecutor was so motivated. Nor did the trial court find the prosecutor intended to harass or prejudice the defendant's rights by his action, and the trial judge made no finding in respect to whether the defendant was harmed or prejudiced by the prosecutor's conduct. It did comment, however, that the testimony elicited from Officer Heroux was repetitious and irrelevant. Our examination of the record also fails to reveal that any arguably prejudicial testimony was elicited in the direct examination of Officer Heroux or that this testimony would in any

way have been subject to impeaching cross-examination had the prior witness statement been presented to defense counsel. We are unable, however, to reach that conclusion with any certainty, because the prior witness statement of the officer is not included in the record. There is no contention, however, that a cross-examination based on the prior statement would have been particularly meaningful. What does appear is that the prosecutor, in light of the previous admonitions and comments of the court, wilfully persisted in improper procedure.

It is argued by defendant that, whether or not the record reveals actual prejudice, the circumstances properly lend themselves to a finding that the prosecutor's violation was done in a conscious effort to prejudice defendant. Defense counsel argues that intent can be inferred. Defense counsel makes the familiar argument that, if an act is unauthorized and offensive and if the defendant intended to commit the act, the law implies an intent to injure. He reasons that the prosecutor had previously been warned that a persistent violation of the rule in respect to prior witness statements could result in a mistrial, and he makes the proper assumption that a mistrial impairs the right of a defendant to have his case finally terminated before a single tribunal. Although this reasoning is tenuous, it is not without an appropriate basis of jurisprudential logic, and we could conclude from the facts presented by the defendant that there was a presumptive intent to thus prejudice the defendant. The conclusion is, however, doubtful, because the premise on which the defendant bases his argument is not as explicit as he asserts. At no time did the trial judge say that the violation of the mechanics of witness statement rule would result in a mistrial. Rather, the prior admonitions of the trial judge tied that possibility to the extent of prejudice which could re-

sult from the failure to turn over the statements and thus impede cross-examination.

In respect to the first violation, he found no prejudice and pointed out that the procedural error was correctable by cross-examination after defense counsel had an opportunity to go over the prior statements. Nevertheless, the tenor of the colloquy which followed the first violations necessarily carried with it the implication that a mistrial was the possible, perhaps even likely, consequence of a repeated violation. It is difficult, however, to see that the improperly offered testimony of Officer Heroux in itself resulted in prejudice that was not fully correctable by cross-examination after a recess. The court pointed out that Officer Heroux' testimony was largely irrelevant and repetitious. Had the trial judge *sua sponte* declared a mistrial without the defendant's approval and we were reviewing that determination rather than the situation here, where the defendant moved for a mistrial, it would be difficult to see the "manifest necessity" of aborting the trial. The conduct of the prosecutor in this case was an insult to the institutional values of an orderly trial, but it reveals no actual prejudice to the defendant. Nevertheless, the record makes clear, particularly in light of the prior motion for mistrial, that another transgression might trigger a motion for mistrial. If the mistrial were intentionally provoked, that, no doubt, would result in the subversion of the defendant's right to complete his confrontation with society before a single tribunal. This in itself is arguably prejudicial.[7]

---

[7] Were the case to turn on this issue we would be hesitant to so find. This is because, *inter alia*, when the court evinced its frustration with the prosecutor and the actual declaration of mistrial was clearly imminent, the prosecutor importuned the court *not* to grant mistrial, which would "punish the system," but instead to "punish me." This constitutes some evidence that, whatever the prosecutor's motivation, it may not have been to provoke a

This, however, addresses but one facet of prosecutorial conduct which in some cases might be sufficient to bar a retrial, i.e., "intended . . . to subject defendants to the substantial burdens imposed by multiple prosecutions." *Dinitz, supra* at 611. There is no evidence of this intent. Moreover, the record is devoid of any evidence to show that the prosecutor's action was designed to avoid an acquittal or to harass the defendant by multiple prosecutions. The trial court expressly found that at the time the mistrial situation arose, the prosecution's case was very strong, so strong the trial court said:

"[A]t that point . . . in the Court's view Mr. Zapf could have gone on vacation and not argued the case and it probably would have been difficult for you [the defense counsel] to convince the jury that they should not find him guilty."

In the trial court's view, what appeared more explanatory of the perverse conduct of the prosecutor was that "the State was bound and determined not to get a conviction." The court on the double jeopardy motion made the express finding that, because of the strength of the state's case at the time of the second procedural violation by the prosecutor, the prosecutor could not have been provoking a mistrial out of fear of acquittal or to gain some advantage by provoking a mistrial.

The trial court determined, where the motion for mistrial had been made by the defendant, that only such manipulative conduct, to avoid an acquittal, was sufficient to ground a claim of prosecutorial overreaching which would bar a reprosecution. Although this incompletely states the correct test—which would in addition bar reprosecution where the prosecutor intentionally provokes mistrial in order to harass by multiple prose-

---

mistrial. The record, however, reveals no evidence that the prosecutor sought a mistrial for the *purpose* of harassing the defendant in successive trials. The direct evidence is to the contrary.

cution—we point out again that the evidence would not sustain such latter finding. Moreover, that issue is not presented in this case.

Accordingly, it is upon this second element—the failure of any evidence or reasonable inference derived from the evidence to show that the prosecutor was seeking a second chance to convict or to harass by multiple prosecutions—that the defendant's double jeopardy claim founders. We are satisfied that the conduct here, misguided as it was, did not descend to the nadir of conduct required for prosecutorial "overreaching." In view of the strength of the state's case at the time of the prosecutorial violation, it would have been irrational for the prosecutor to manipulate the trial in order to create a better subsequent opportunity to convict. It is clear, whatever his intent, it was not that.

It is apparent that the state's opportunity to secure a conviction was probably never better than in the original proceedings and that the prosecutor was not trying to harass the defendant through a second trial. We are satisfied that a careful reading of the double jeopardy doctrine as stated by the United States Supreme Court does not support the conclusion that a reprosecution is barred under circumstances where there is provocation of a mistrial when there is no evidence that the intent to provoke a mistrial was to avoid an unfavorable verdict or to harass by retrial. While the prosecutor's conduct constituted error, it is no different than ordinary prejudicial error, which would warrant a reversal on appeal, but not a bar to reprosecution.

It should be noted, however, that one statement of the United States Supreme Court in *Lee v. United States,* 432 U.S. 23 at 33, leaves the possible implication that an effort to prejudice the defendant at the first trial as a result of serious and intentional prosecutorial error bars

reprosecution. In *Lee v. United States* appears the language:

"It follows under *Dinitz* that there was no double jeopardy barrier to petitioner's retrial unless the judicial or prosecutorial error that prompted petitioner's motion was 'intended to provoke' the motion or was otherwise 'motivated by bad faith or undertaken to harass or prejudice' petitioner." *Lee* at 33–4.

This very quotation from *Lee* appears in *State v. Harrell, supra* at 337, and is paraphrased to similar effect in *State v. Jenich,* 94 Wis.2d 74, 92, 288 N.W.2d 114 (1980), and *State v. Kendall,* 94 Wis.2d 63, 73, 287 N.W.2d 758 (1980). We conclude, however, that the quoted portion of *Lee* and our prior paraphrases thereof in the cited cases do not accurately reflect Supreme Court doctrine. *Lee* explicitly purports to follow *Dinitz,* but it does not. The statement in *Lee* is an incomplete and inaccurate elision of *Dinitz.* What *Dinitz* holds is that the double jeopardy clause:

". . . bars retrials where 'bad-faith conduct by judge or prosecutor' . . . threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." *Dinitz* at 611.

The citations relied upon in *Dinitz* to support the above statement are cases which emphasize the manipulative purpose of the prosecutor to secure a more favorable opportunity to convict at a second trial. Accordingly, the quotation from *Lee* does not accurately reflect with verbal completeness the United States Supreme Court's position and does not in itself constitute the whole test for determining whether judicial or prosecutorial misconduct constitutes "overreaching" which would bar a second trial. It fails even to state with completeness that the harassment or prejudice to the defendant that bars another trial is the prejudice and harassment implicit in the

retrial itself—not prejudicial events of the original trial.

It is apparent, of course, that we could, as a matter of state law in our supervisory capacity over the courts and the practice of law, reach the conclusion that even the partial test posed in the truncated standard of *Lee* could bar reprosecutions. We believe, however, that to do so would impair the essential right of the public to reprosecute where the intent of the prosecutor in provoking a mistrial was not a manipulative one to give the state a second chance to convict under circumstances where the state concluded the original prosecution was not going well or where the error, though egregious, could not be found to have been committed for the purpose of harassing a defendant by successive prosecutions. This test would over-emphasize the temporary frustrations and pique of prosecutors and judges when procedural matters in the course of a trial were not going smoothly irrespective of the motives of the offending officer and irrespective of whether the officers of the state wanted to save the state's case for more propitious circumstances or to harass the defendant by multiple prosecutions. We reject the purported *Lee* formulation of prosecutorial and judicial overreaching, because it does not represent with accuracy supreme court doctrine and because, as so abbreviated, it does not comport with public policy. The public policy at stake is not only to do justice to the defendant by affording him, if possible, one proper trial before a single tribunal, but also to afford the public the opportunity to convict in a reprosecution if the right to a fair trial is afforded to both the defendant and the state in a second trial. There is nothing unfair or contrary to the spirit of the double jeopardy clause in ordering a retrial in a circumstance where despite prosecutorial error the defendant's rights have not been manipulated in order to give the state a second and more propitious opportunity to convict or to

order retrial where the error has not been committed with the intent to harass by successive prosecutions. We, accordingly, conclude that, although the prosecutorial error here arguably prejudiced the defendant's opportunity to have a fair and orderly trial in the first tribunal and the defendant asserted that right by his own motion for a mistrial, there was no showing and there is no inference that the state's evidence to convict could be improved upon at retrial or that a retrial was sought for purposes of harassment.

In circumstances where the defendant moves for, or consents to, a mistrial, reprosecution is barred only if prosecutorial and judicial actions provoke that mistrial by conduct that falls within the definition of "overreaching"—the culpable intent to deprive the defendant of a complete trial in the first tribunal for the purpose of avoiding an acquittal and to gain the opportunity to have a second and better opportunity to convict or for the malicious purpose of harassment in or by the second trial.

As worthy of criticism as was the conduct of the prosecutor in this case, it did not constitute prosecutorial overreaching to the extent that the public should be denied an opportunity to pursue its remedies in an orderly second trial. Accordingly, we reverse the decision of the court of appeals which held the defendant could not be reprosecuted.

In his assignment of errors to the court of appeals, the defendant raised additional issues concerning the sufficiency of the complaint and information. The court of appeals did not reach these matters, as it disposed of the case by holding that the conviction must be reversed on double jeopardy grounds. Since we hold that double jeopardy did not bar the defendant's reprosecution and conviction, these remaining issues must be reached.

While we would not be precluded from considering and deciding these issues in the case's present posture, under

the circumstances we remand the case to the court of appeals for consideration of the remaining assigned errors. It was the express understanding of the parties, pursuant to the petition for review, our order granting review, and subsequent correspondence by the parties to each other and to this court, that our review would be limited to the double jeopardy question reached by the court of appeals. Although the parties' briefs to the court of appeals are of record and address the remaining issues, the briefs to this court and the scope of oral argument were limited to the single question of double jeopardy. Given the parties' mutual expectation that we would reach only that question, and the lack of any apparent reason for us to act as the court of initial appellate review on the other assignments of error, we remand to the court of appeals for further consideration of those matters.

*By the Court.*—Decision reversed; and, consistent with this opinion, cause remanded to the court of appeals.