HURLEY, Judge.
The trial court found that a predecessor judge had engaged in overreaching by provoking the defendant’s motion for mistrial. The successor judge ruled that retrial was barred by the Double Jeopardy Clause and, therefore, granted the defendant’s motion to dismiss. We conclude that the finding of judicial overreaching is not supported by the record and, consequently,' we reverse.
The defendant was arrested and charged with trafficking in marijuana[1] and possession of phenobarbital with intent to sell.[2] He was fingerprinted as part of the booking process. Subsequently, he filed a motion to suppress tangible evidence.[3] Therein, he alleged that the warrantless arrest was improper and that a subsequent search of an airplane (with a warrant) was likewise illegal. After an evidentiary hearing, the trial court granted the motion, in part, by ruling “that the Defendant’s Motion to Suppress the Physical Evidence of those items obtained from a search of the person of the Defendant and his baggage, is hereby granted.” The court, however, refused to suppress evidence found in the airplane. The state did not appeal the suppression order.
At trial, a controversy developed over whether the defendant’s fingerprints, taken during the booking process, had been suppressed. Defense counsel argued that they had been suppressed because his motion requested the suppression of all physical evidence derived as a result of the illegal arrest. Counsel for the state, however, contended that the post-arrest fingerprints had not been suppressed because the motion did not specify fingerprints as an item sought to be suppressed. Also, the prosecutor noted that defense counsel had failed to mention fingerprints when asked for an oral *763 clarification at the outset of the suppression hearing. After extensive argument, to which we shall subsequently refer, the trial court ruled that the post-arrest fingerprints had not been raised by the defendant’s motion and, therefore, were not covered by the suppression order. Furthermore, in the exercise of its discretion, the court declined to permit an in-trial suppression hearing. However, the court did indicate that if requested by the defendant, it would grant a mistrial and thereafter grant an amended motion to suppress. Thereupon, defense counsel requested and received a mistrial.
Prior to retrial, the defendant moved to have the trial judge disqualify herself because of certain statements made during the discussion preceeding the motion for mistrial. Pursuant to Rule 3.230, Fla.R. Crim.P., the court disqualified itself and a successor judge was appointed. Next, the defendant filed a motion to dismiss on the ground that retrial was barred by the Double Jeopardy Clause.[4] Defendant argued that he had been forced to move for a mistrial because of judicial overreaching and, therefore, could not be retried. The successor judge agreed and granted the motion. The state brought this appeal.
The general principles applicable to this case were set forth in Bell v. State, 413 So.2d 1292 (Fla. 5th DCA 1982).
Double jeopardy generally is not a defense to a subsequent prosecution when a mistrial had been granted in the original trial upon the defendant’s motion or with his consent or where the circumstances clearly required the mistrial in the interest of justice. However, double jeopardy will bar a second prosecution when the mistrial resulted from judicial or prosecu-torial overreaching.
Mere error by the judge or prosecutor resulting in the defendant’s request for mistrial is not sufficient to bar reprosecution. The double jeopardy clause protects a defendant against governmental actions intended to provoke a mistrial. It bars retrials where bad faith conduct by the judge or prosecutor goads the defendant to request a mistrial.
Id. at 1294 (citations omitted). Recently, the United States Supreme Court held that “the circumstances under which ... a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for mistrial was intended to provoke the defendant into moving for a mistrial.” Oregon v. Kennedy, - U.S. -, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982).[5] Similarly, the Wisconsin Supreme Court concluded that a finding of overreaching depends more on the motivation behind the conduct in question, than on the egregiousness of the conduct itself. State v. Copening, 101 Wis.2d 700, 303 N.W.2d 821 (1981). Thus, the court offered this definition of overreaching:
The culpable intent to deprive the defendant of a complete trial in the first tribunal for the purpose of avoiding an acquittal and to gain the opportunity to have a second and better opportunity to convict or for the malicious purpose of harassment in or by the second trial.
Id. 303 N.W.2d at 833.
In the case at bar, the defendant claimed that the first trial judge declined to permit an in-trial suppression hearing because of a manipulative motivation. In his renewed motion to dismiss, the defendant made the following allegation:
*764 [The Judge], confronted with a situation where the Defendant was about to be acquitted, suggested, provoked, enticed and pressured the Defendant into moving for a mistrial. The actions of [the Judge] were in bad faith and calculated to give the State additional time and a second trial (now pending before this Court) at which new fingerprints could be introduced.
As indicated, the successor judge reviewed the transcript of the first trial and granted the motion to dismiss, impliedly finding impermissible overreaching by the predecessor judge.
To understand and evaluate this finding, we must detail a portion of the first trial. We begin at the point where the state attempted to introduce the defendant’s post-arrest fingerprints into evidence. Defense counsel objected on the ground that they had been suppressed. The prosecutor disagreed. He noted that the post-arrest fingerprints had not been listed in the defendant’s written motion and that defense counsel had failed to mention them when asked for an oral clarification at the outset of the hearing. The prosecutor said that he had been prepared to argue against the fingerprints’ suppression, but, in light of their omission by the defense, he decided it was unnecessary. The prosecutor further argued that even if the prints had been suppressed, he would have been entitled to have the defendant refingerprinted pursuant to Rule 3.220(b)(iii), Fla.R.Crim.P.[6] Alternatively, he said that if he had been on notice of the defendant’s position, he would have tried to obtain a second set of prints from an independent source such as the FBI or the military.
In response, defense counsel noted that the court’s order expressly suppressed those items obtained from a search of the defendant. Since the fingerprints were obtained from the defendant after an illegal arrest, defense counsel argued that they were obviously covered by the order’s language. To buttress his position, defense counsel cited the United States Supreme Court’s holding in Davis v. Mississippi.[7] Furthermore, he argued that due to the illegality of the arrest, the state was precluded from utilizing Rule 3.220(b)(iii) to have the defendant refingerprinted. Finally, he argued that due to the illegality of the arrest, the state was precluded from using any information gained from the arrest, e.g., the defendant’s name and address, to obtain fingerprints from an independent source.
At this point, the court said, “So, where does this put us, because I mean, I really don't see that I have much choice here considering the language in this case, Davis v. Mississippi and this Roosky (phonetic) v. State, that I read.” The prosecutor then asked for an early luncheon recess so that he might do some research and respond to the cases cited by the defense. Before granting the request for an early recess, the court restated the legal issue and said to the prosecutor, “Let’s assume that you would not have been able to get them from anyplace else. Believe me, I desperately want to help your end because I know the results of this situation, but I feel stuck.” A few moments later, alluding to defense counsel’s view of the controlling law, the court said, “Well, it’s influencing the Court’s decision to the extent that I intend to give them every opportunity to let them win.” Thereupon, the court recessed for lunch.
When the argument resumed, the prosecutor offered his recollection of what had *765 transpired at the pre-trial suppression hearing. The court observed, “I remember all of that. I understand and I remember everything you have said. The only thing is, I wasn’t aware at the time that everybody was playing games. I mean, you [the prosecutor] are playing games, hoping to get to this point and you [defense counsel] are playing games hoping he wouldn’t get to this point.” Later, the court expanded on its perception of what had occurred. It said, “I am yelling at both of you. He [defense counsel] should have said: T want to suppress fingerprints.’ You [the prosecutor] should have said: ‘Does that include the fingerprints?’ And we could have ruled on it and everything.” In the same vein, the court said, “The funny thing is I believe that both of you did the wrong thing, I really do. I think we should cut out this baloney and let the chips fall wherever they are going to fall. The problem is no matter how I rule, I end up rewarding one of you for being a little bit [dis]honest with the Court.”
As the argument progressed, the court began to center its attention on Rule 3.190(h), Fla.R.Crim.P.[8] Ultimately, the court concluded that the motion to suppress, as initially drafted and later clarified, did not encompass the post-arrest fingerprints. The court reasoned that the rule’s requirement of particularity demanded something more precise than a request to suppress all evidence. Therefore, the court limited the applicability of its suppression order to those items which had been orally specified by defense counsel at the suppression hearing. Furthermore, after assessing the state’s contention of prejudice, the court denied a defense motion to conduct an in-trial suppression hearing. The court explained: “I don’t think it’s proper for me to encourage everybody to file particle [sic] motions to suppress. We either should hear the motion to suppress or we shouldn’t hear the motion to suppress.”
Finally, the court inquired, “Can I grant a mistrial?” When informed that jeopardy would attach unless the defendant initiated the motion, the court stated, “That’s what I want to prevent. It seems to me the fairest thing now due to the fact, I don’t think either one should be rewarded for playing those games is to go back to the beginning.” Elaborating on this point, the court said, “I just think we are establishing precedent here that ought not to be established in terms of winning and I am trying, frankly, to give you a way to equalize the situation by suggesting a mistrial.” The court further stated, “it’s your only option, you know, I am trying to minimize the effect of the technicality involved here; but I just cannot see that I should encourage, if a motion to suppress was going to be filed, it ought to include everything and let me deal with it in the legal way and let you get on with the trial. I cannot encourage this kind of thing. We spent over an hour and a half on the motion to suppress and that should have been handled back when we had it.” Defense counsel then inquired about the date for retrial and the defendant’s prospects for bond if counsel should move for a mistrial. With this information in hand, counsel moved for and obtained a mistrial.
The question on appeal is whether the record contains substantial competent evidence to support the finding of overreaching. Rephrased in light of the applicable case law, the question is whether there is record support for the conclusion that the first trial judge exercised her discretion and declined to permit an in-trial suppression hearing because of a bad faith manipulative motivation to aid the state in gaining a tactical advantage over the defendant on retrial.
Although overreaching is virtually always discussed in connection with improper conduct, we believe that a discretionary act could support a finding of overreaching if it could be shown conclusively that the *766 court exercised its discretion out of bad faith and for the manipulative purpose of inducing a motion for mistrial so that the state could improve its case on retrial. In this case, however, the defendant has failed to meet this burden. While some of the court’s remarks, if taken out of context, might lend themselves to such a characterization, the totality of the court’s remarks negates any suggestion of improper motivation.[9] Indeed, it is obvious that the court acted to insure procedural regularity and, at the same time, to relieve the defendant from the consequences of a near-fatal pleading error.
Initially, the trial court ruled that its suppression order did not cover the post-arrest fingerprints because the defendant’s motion failed to satisfy Rule 3.190(h)(2)’s requirement of particularity. This ruling was correct. The motion as drafted was legally deficient. See State v. Hinton, 305 So.2d 804, 808 n. 2 (Fla. 4th DCA 1975). This deficiency is all the more glaring due to the fact that the defense was on notice of the state’s possession and potential use of fingerprints evidence. The state’s response to the defendant’s demand for discovery, filed long before the motion to suppress, listed fingerprints as a probable item of evidence.[10] Furthermore, defense counsel did not mention fingerprints in his detailed response to the request for clarification at the beginning of the suppression hearing. Thus, counsel failed to cure the drafting error.[11] Since the defendant was afforded a pretrial suppression hearing and either knew, or, in the exercise of reasonable diligence, should have known of the existence of the post-arrest fingerprints, we hold that the decision not to permit an in-trial suppression hearing was a matter within the trial court’s discretion. See Wingert v. State, 353 So.2d 643 (Fla. 3d DCA 1977); Rule 3.190(h)(4), Fla.R.Crim.P., cf. McDonnell v. State, 336 So.2d 553 (Fla.1976); Land v. State, 293 So.2d 704 (Fla.1974). Furthermore, our review of the record convinces us that the court exercised its discretion for wholly permissible reasons.
Actions manifest intent. Here, the actions of the first trial judge belie any suggestion of bad faith or manipulative intent. From the outset, the court implemented the law’s dictates. For example, it granted, in part, the defendant’s motion to suppress and consistently indicated that if the post-arrest fingerprints had been properly raised, they too would have been suppressed. Indeed, the court went so far as to indicate its willingness to grant an amended motion to suppress without taking additional evidence upon granting the defendant’s motion for mistrial.
In this effort to plumb the court’s mind and discern its intent, we believe that the court’s failure to take certain action is also relevant. If, as the defendant now suggests, the court’s purpose was to give the state a tactical advantage, then the surest method to achieve that end would have been to deny the defendant’s motion for an in-trial suppression hearing and to require that the trial proceed. The admission of *767 the post-arrest fingerprints would have linked the defendant to the contraband and virtually assured his conviction. But this was not the court’s underlying purpose. Significantly, it was the trial judge, not defense counsel, who first raised the possibility of a mistrial. The purpose of this suggestion was eminently fair. It was to minimize the effect of defense counsel’s unintentional error which, if not rectified, would have resulted in a partial waiver of the defendant’s Fourth Amendment rights.
It is incongruous that the defendant, having profited from the court’s magnanimity, would now have us characterize that action as error. It was not. The court exercised its discretion and granted a mistrial only to save the defendant from the harsh consequences of his attorney’s action. The fact that the solution to the defendant’s dilemma originated in the mind of the court does not support a conclusion of judicial overreaching. Justice tempered with mercy is one of the highest ideals of Anglo-American jurisprudence. That ideal was realized here. Yet, it did not impair the court’s strict adherence to the doctrine “that every litigant is entitled to nothing less than the cold neutrality of an impartial judge.” State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613, 615 (1939).
In rendering this decision, we intend no criticism of the successor judge who was called upon to assess the actions of a colleague; that decision was difficult and courageous. Moreover, it was made without the benefit of the research provided to this court. Nonetheless, we hold that the record in this case, when measured against the appropriate standard, does not support a finding of judicial overreaching. Accordingly, the order of dismissal is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED.
DOWNEY and BERANEK, JJ., concur.

. § 893.135(l)(a), Fla.Stat. (1979).

. § 893.13(l)(a), Fla.Stat. (1979).

. Defendant’s motion sought the suppression of “all items seized by members of the Boca Ra-ton Police Department and the U.S. Customs Officers, particularly those tangible items contained in the information in the above-styled cause .... ”

. “[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb;” U.S. Const.amend. V.

. The court gave this explanation for its adoption of the intent standard:
[A] standard that examines the intent of the prosecutor, though certainly not entirely free from practical difficulties, is a manageable standard to apply. It merely calls for the court to make a finding of fact. Inferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system. When it is remembered that resolution of double jeopardy questions by state trial courts are reviewable not only within the state court system, but in the federal court system on habeas corpus as well, the desirability of an easily applied principle is apparent.
Oregon v. Kennedy, - U.S. -, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982).

. Rule 3.220(b)(iii), Fla.R.Crim.P., provides that “[a]fter the filing of the indictment or information and subject to constitutional limitations, a judicial officer may require the accused to [b]e fingerprinted.” In the case at bar, however, the trial court indicated that it would not have permitted the defendant to be refingerprinted. “You cannot arrest somebody illegally, then bring them into court on an information; then using the discovery rules that say you can take his prints at trial, that makes no sense at all.” Since this issue is not before us, we decline to express an opinion on the correctness of the trial court’s assertion.

. 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (fingerprints obtained during a constitutionally invalid detention held inadmissible at trial).

. Subsection (h)(2) of Rule 3.190, Fla.R.Crim.P. requires that “[ejvery motion to suppress evidence shall clearly state the particular evidence sought to be suppressed .... ” Subsection (h)(4) states that “[t]he motion to suppress shall be made before trial ... but the court may entertain the motion or an appropriate objection at the trial.”

.In particular, defense counsel complained about the following two statements. (1) “Believe me, I desperately want to help your end because I know the results of this situation, but I feel stuck.” (2) “Well, it’s influencing the Court’s decision to the extent that I intend to give them every opportunity to let them win.” Ante, at 764. In addition to the obvious unfairness of segmenting these remarks and viewing them out of context, we are concerned that such an approach would foreclose candid discussion between the court and counsel. The sound administration of justice demands that the court and counsel be able to talk to each other to better understand the issues at hand. That process would be severely impaired if the resulting dialogue were subject to blind dissection and analysis without reference to context.

. Under the heading “3(i) — Tangible papers or objects obtained from or belonging to the Defendant,” the state listed: “Latents — Boca Ra-ton Police Dept.”
Under the heading “3(j) — Tangible papers or objects not obtained from or belonging to the Defendant which the State intends to use at hearing or trial, “was listed: latent prints, known prints, photos, airplane, maps, marijuana, barbiuates [sic]/dilaudid, notes (flight), receipt, plastic wrap, and passport.”

. The transcript of the suppression hearing also reveals that depositions had commenced prior to the suppression hearing.