# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP2012-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, <br>      Plaintiff-Appellant-Petitioner, <br>   v. <br> James P. Killian, <br>      Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 404 Wis. 2d 451, 979 N.W.2d 569
PDC No: 2022 WI App 43 - Published

| | |
|---|---|
| OPINION FILED: | June 21, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 17, 2023 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Trempealeau |
|   JUDGE: | Rian Radtke |

JUSTICES:
ZIEGLER, C.J., delivered the majority opinion of the Court, in which ROGGENSACK, DALLET, HAGEDORN, and KAROFSKY, JJ., joined. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs filed by *Kara L. Janson,* assistant attorney general, with whom on the briefs was *Joshua L. Kaul,* attorney general. There was an oral argument by *Kara L. Janson,* assistant attorney general.

For the defendant-respondent, there was a brief filed by *Todd E. Schroeder* and *Schroeder & Lough, S.C.,* La Crosse. There was an oral argument by *Todd E. Schroeder.*

2023 WI 52

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.    2020AP2012-CR
(L.C. No.  2019CF163)

STATE OF WISCONSIN                    :        IN SUPREME COURT

State of Wisconsin,

       Plaintiff-Appellant-Petitioner,

  v.

James P. Killian,

       Defendant-Respondent.

**FILED**

**JUN 21, 2023**

Samuel A. Christensen
Clerk of Supreme Court

---

ZIEGLER, C.J., delivered the majority opinion of the Court, in which ROGGENSACK, DALLET, HAGEDORN, and KAROFSKY, JJ., joined. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY, J., joined.

---

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1    ANNETTE KINGSLAND ZIEGLER, C.J.   This is a review of a published decision of the court of appeals, State v. Killian, 2022 WI App 43, 404 Wis. 2d 451, 979 N.W.2d 569, affirming the Trempealeau County circuit court's[1] order dismissing a criminal complaint against James Killian as barred by double jeopardy. We reverse.

---

[1] The Honorable Rian Radtke presided.

¶2 Killian argues the Fifth Amendment's Double Jeopardy Clause prohibits the State from prosecuting the present case. According to Killian, the State previously prosecuted him for the offenses charged in this case because "[t]he evidence the State intended to submit in the preceding trial was sufficient to convict [Killian] of all the charges in the current case," and "the State intended to amend the charges against [Killian] during the trial to include charges for which he is again placed in jeopardy here." Because that case ended in a mistrial intentionally provoked by the prosecutor——a judicial determination the parties do not contest here——Killian argues double jeopardy bars the State's prosecuting the present case. Killian argues in the alternative that issue preclusion, under both the Double Jeopardy Clause and the common law, bars the present case.

¶3 We conclude that Killian's previous trial does not bar the State from prosecuting the present case because the scope of Killian's jeopardy in his trial did not include the offenses with which he is now charged. The scope of jeopardy is established by "the defendant's actual exposure to jeopardy in a prior prosecution." State v. Schultz, 2020 WI 24, ¶31, 390 Wis. 2d 570, 939 N.W.2d 519. This requires that the defendant faced a "risk of a determination of guilt" regarding a particular offense. Serfass v. United States, 420 U.S. 377, 391-92 (1975). Killian was never exposed to the risk of conviction for the offenses charged in the present case. As a result, the offenses prosecuted in Killian's trial are not

2

identical in law and in fact to the offenses charged in this case, so double jeopardy does not bar the present prosecution.

¶4 We also conclude that issue preclusion under the Double Jeopardy Clause and common law issue preclusion do not bar the present prosecution. Issue preclusion under the Double Jeopardy Clause requires a valid judicial determination of ultimate fact, and none exists in this case because Killian's trial ended in a mistrial. See Ashe v. Swenson, 397 U.S. 436 (1970). Common law issue preclusion also does not bar this prosecution. The circuit court's order dismissing with prejudice the criminal complaint in the first case did not decide the scope of Killian's jeopardy. Therefore, that issue was never "actually litigated," and issue preclusion does not bar the present prosecution. See Aldrich v. LIRC, 2012 WI 53, ¶88, 341 Wis. 2d 36, 814 N.W.2d 433.

¶5 We therefore reverse the court of appeals and remand to the circuit court to consider Killian's unresolved argument regarding prosecutorial vindictiveness.

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶6 This case involves Killian's alleged sexual assaults of two minors: Britney and Ashley.[2] On March 17, 2015, the State charged Killian in Case No. 2015CF47 with one count of first-degree sexual assault of a child under the age of 12

---

[2] "Britney" and "Ashley" are pseudonyms used in place of the victims' names. The parties used these same pseudonyms in their briefs. See Wis. Stat. (Rule) § 809.86(4) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

3

contrary to Wis. Stat. § 948.02. The complaint alleged that, "on or about Monday, August 18, 2014," Britney, then ten years old, "was laying on a bed at [a] residence and [Killian] came in, laid beside her and grabbed her buttocks." The probable cause section further stated that during a forensic interview, Britney reported "that Killian had squeezed her butt on five different occasions starting when she was about eight years old" and that Killian also "touched her 'boobies' underneath her clothes" in 2014.

¶7 The State filed a second criminal complaint on March 15, 2016, in Case No. 2016CF38, charging Killian with repeated sexual assault of a child contrary to Wis. Stat. § 948.025. The complaint alleged, "from April 1994 through December 1999," Killian sexually assaulted Ashley. Additionally, the complaint's probable cause section stated Ashley "had been sexually assaulted by [Killian], starting at the age of six and ending at 17 years of age . . . start[ing] in about January 1988 and end[ing] about December 1999."

¶8 The two cases were later joined for trial. On October 5, 2016, prior to the cases being joined, the circuit court[3] held a hearing in Britney's case on the parties' respective motions to admit or exclude other-acts evidence. The circuit court granted the State's motion to admit evidence of sexual assaults against Ashley that "occurred over a period of time between January 1988 and December of 1999" to demonstrate

---

[3] The Honorable Anna L. Becker presided.

4

Killian's "motive, intent, preparation, absence of mistake or accident, and plan." The court also addressed Killian's motion to prohibit the State "from using evidence pertaining to other crimes, wrongs, or acts." The State argued it planned to introduce evidence of Killian's past interactions with Britney to show Killian "groomed [Britney] by engaging in behavior that include[d] asking her if he could be her boyfriend," "[b]uying her gifts," and "[n]ormalizing the behavior of sleeping with her in the bed together." Killian did not object to such evidence of "grooming" but only to "other acts of sexual assault." The State agreed it was "not alleging that [Killian] touched [Britney] outside of anything that was alleged here." The State then said it would not object, and the court granted Killian's motion to exclude evidence of other acts of sexual assault against Britney.

¶9 On June 15, 2017, four days before Killian's trial, the State filed a motion for leave to amend the Information. The proposed Amended Information included in Ashley's case one count of incest with a child contrary to Wis. Stat. § 948.06. The proposed Amended Information also expanded the charging period for Britney's case from "on or about Monday, August 18, 2014" to "on or between January, 2014 to August 18, 2014."

¶10 The circuit court discussed the State's motion with the parties in the morning on the first day of trial. Due to the State's delay, the court denied the addition of the incest charge. The prosecutor then commented that "maybe the proof at the trial will be sufficient to convince the Court that more

5

sexual intercourse occurred which would be a basis for this charge." In response, the court reiterated how "the state's lack of preparation should not prejudice the defendant" and made clear, "I'm not going to allow [the amendment]."

¶11 As for the expanded charging period in Britney's case, Killian's counsel expressed concern about how "the act that's charged is a single act" and that the State was "attempting to . . . expand the date range in the hopes that it would make admissible evidence of other allegations that have not been charged." Defense counsel also reminded the court of the other-acts ruling in October and said, "So even if the date range were widened, I would argue that at this point, it would be inadmissible to bring in allegations of sexual contact." He reiterated, "[W]e came here to defend an alleged sexual contact that occurred on August 18th. And I think at the same time, this raises concerns that are even more broad than this one count." The prosecutor responded, "I think it's quite clear that we do not have to prove the actual date of the allegation," and clarified, "[O]f course, [Killian is] correct. We are charging one sole act." He further noted the possibility of amending the Information:

> Interestingly, it appears to me that if more acts are disclosed at trial, the Information could be changed. And it could, in fact, I think naturally prejudice the defendant more. But I don't think that's unusual. It happens at trial that more facts are accused and Informations are changed and juries deliberate on multiple issues.

6

The circuit court clarified that the State was "not alleging there were additional things that happened. . . . [I]t's the same events or package that we've heard about all along. Nothing new." The prosecutor confirmed but nonetheless included, "If more facts are introduced at trial, the Court can amend the Information and give that instruction to the jury."

¶12 The court allowed the expanded date range, but only for purposes of establishing "when exactly [the alleged act of grabbing Britney's buttocks] happened on the calendar." Defense counsel sought clarification "that there can be no reference to other alleged touching that would constitute sexual assault of any kind," and the court agreed: "If there were intentions to introduce those at trial, then those were required to have been addressed and they were not addressed at all. So there's already been a ruling on that."

¶13 The trial commenced later that same day. During the prosecutor's opening statement, he told the jury Killian "would rub himself on [Britney]." The prosecutor continued, describing to the jury how, on one occasion, Killian "was rubbing himself on [Britney]. And by himself, I mean his penis. Erect. Rubbing on her. . . . It's an unmistakable course of conduct." With regard to Ashley, the prosecutor told the jury they would hear testimony that Killian "started molesting her at about 6 or 7 years old [1988-89] and didn't stop until she was about 17 [1999]. So approximately 10 years."

¶14 On the second day of trial, just before Britney testified, the prosecutor argued to the court that he could introduce other acts of sexual assault against Britney:

> I re-reviewed the Criminal Complaint. What is on trial, the course of conduct, there was a motion in limine filed by the defense regarding other acts. I believe we could bring all that out. Look at the court minutes. I don't think these are other acts. I think they're a course of conduct. They're relevant. They set the stage for our allegation of sexual contact. And I think although there is one incident charged, the state doesn't have to charge every incident. The state had discretion. But in the Complaint, the course of conduct is there. The different things that she says happened.

Defense counsel objected to the State's introducing other acts of sexual assault and reminded the court of its previous ruling: "[I]f there's an other act that would constitute sexual conduct, I'm going to be objecting and asking for a mistrial if that comes out at any point in this trial because that's been thoroughly litigated and decided as of yesterday again." The prosecutor further argued that "the way to address this is let [Britney] speak. . . . [I]f there's more information, more charges can be brought. The [I]nformation can be changed." The court rejected such a possibility. It reminded the prosecutor, "[T]here was a ruling on that. . . . You're changing the game on them. If you wanted to include that, then we should have addressed that." The prosecutor continued, "Anything could happen when she testifies. I don't know. But if she starts to speak about a vagina rub or him rubbing his penis on her leg, I can't control that. And if she does that, then I guess [defense

counsel's] going to move for a mistrial." The court warned the prosecutor, "It will be a mistrial because you didn't, again, prepare for trial adequately until the last moment." The circuit court reminded the parties that the offense "charged in the Complaint . . . was the butt[-grab]," and the court thoroughly explained its ruling because it was "concerned about a mistrial":

> [T]he state can bring in anything that they would like to regarding other acts that are grooming type activities but not other sexual assaults because those should have been properly dealt with when we talked about the motions that were filed for other acts. I think these are clearly allegations that were other acts of sexual assault that go to your concerns. But that wasn't what the argument was when we had those.
>
> So I don't think at this point, it's appropriate to allow that in. I think there are other ways that the Court has less prejudicial or the ability to make this less confusing for the jury so that they understand what the exact one is that's being accused here which is the one dating back to August 18th.

¶15 After the court reaffirmed its other-acts ruling, Britney took the stand. She testified first about Killian's grooming behaviors, such as engaging her in conversations about sex. The following exchange then took place:

Q. So so far, we've talked about mostly conversations about sex, right?

A. Yes.

Q. Did you tell [your mother] something else relating to a private part of your body?

A. When I told her that one day when we were in bed he was rubbing my back and he rubbed -- he was rubbing my stomach. So he rubbed up and he rubbed on my

9

breasts. And then when he was done, he rubbed on my private spot. It was just a swift rub.

Defense counsel objected and moved for a mistrial, which the court granted. The court later found "that the prosecutor's actions were intentional" and "designed to create another chance to convict, and was an act done so as to allow the State another 'kick at the cat.'" The court therefore concluded that "the State is barred from retrial in this matter due to prosecutorial overreaching," and it dismissed the case with prejudice. The State did not appeal the circuit court's decision, and it does not dispute the circuit court's finding of prosecutorial overreach.

¶16 On October 1, 2019, the State filed a new criminal complaint against Killian in the case now before us. The complaint contained the following counts:

Count 1: First-degree sexual assault of a child contrary to Wis. Stat. § 948.02(1) (1989-90) against Ashley "in or around 1990 to 1991."

Count 2: First-degree sexual assault of a child contrary to Wis. Stat. § 948.02(1) (1989-90) against Ashley "in or around 1990 to 1991."

Count 3: Incest with a child contrary to Wis. Stat. § 948.06(1) (1989-90) against Ashley "in or around 1990 to 1991."

Count 4: First-degree sexual assault of a child contrary to Wis. Stat. § 948.02(1) (1991-92) against Ashley "in or around 1992 to 1993."

10

Count 5: Incest with a child contrary to Wis. Stat. § 948.06(1) (1991-92) against Ashley "in or around 1992 to 1993."

Count 6: Incest with a child contrary to Wis. Stat. § 948.06(1) (1993-94) against Ashley "in or around 1993 to 1994."

Count 7: Incest with a child contrary to Wis. Stat. § 948.06(1) (1993-94) against Ashley "in or around 1994 to 1995."

Count 8: Incest with a child contrary to Wis. Stat. § 948.06(1) (1995-96) against Ashley "in or around 1995 to 1996."

Count 9: Incest with a child contrary to Wis. Stat. § 948.06(1) (1995-96) against Ashley "in or around 1996 to 1997."

Count 10: Repeated acts of sexual assault of the same child contrary to Wis. Stat. § 948.02(1) (2011-12), "namely [Britney]," "in or around June 2012, and no later than August 17, 2014."

¶17 Killian thereafter filed a motion to dismiss the State's new charges.  He argued dismissal was required because "this action violates Judge Becker's Order declaring that the mistrial in Case No. 15-CF-47 was caused by prosecutorial overreaching and that any retrial of this matter would violate

11

the defendant's . . . right to be free from Double Jeopardy."[4] In an oral ruling, the circuit court observed, "In a strict comparison of the Complaints in 15-CF-48 (sic) and 19-CF-163 of the charged offenses under Blockburger,[5] the time frames and elements are different and would pass the Blockburger test." The court nonetheless concluded the second prosecution violates double jeopardy because "[t]he State's plan was to bring all of the alleged acts into trial and then seek to amend the Information after testimony to conform to the evidence." The court also viewed the order dismissing the first prosecution as "meant to encompass future prosecutions involving the same facts alleged in 15-CF-47 where additional charges may be added in future prosecutions." The circuit court therefore concluded Killian's scope of jeopardy, "in light of the record, which includes Judge Becker's order, includes all facts contained in the Complaints that were later joined and amended, including acts in the Complaints that were not specifically the basis for the charged offenses in 15-CF-47, and also facts raised at trial."

¶18 The State appealed, and the court of appeals affirmed. The court of appeals concluded "that the circuit court properly considered the entire record of the first prosecution to determine whether Killian was in jeopardy for the offenses now

---

[4] Killian also has a prosecutorial vindictiveness argument pending in the circuit court. The circuit court never ruled on that issue, and it was not raised on appeal.

[5] Blockburger v. United States, 284 U.S. 299 (1932).

charged," and it "agree[d] with the circuit court in this case that Killian was, in fact, in jeopardy of being convicted of the offenses now charged." Killian, 404 Wis. 2d 451, ¶4. The State petitioned this court for review, which we granted.

## II.  STANDARD OF REVIEW

¶19  "The issue of whether a person's right to be free from double jeopardy has been violated presents a question of law that we review de novo." State v. Trawitzki, 2001 WI 77, ¶19, 244 Wis. 2d 523, 628 N.W.2d 801.  "The application of issue preclusion to a set of facts is a question of law, which this court reviews without deference to the lower courts." State v. Canon, 2001 WI 11, ¶7, 241 Wis. 2d 164, 622 N.W.2d 270.

## III.  ANALYSIS

¶20  We begin our review by discussing general principles of double jeopardy and how to ascertain a defendant's scope of jeopardy in a previous trial.  We then examine Killian's scope of jeopardy in the previous trial and conclude the present prosecution does not place him in jeopardy for any of the same offenses.  Finally, we conclude issue preclusion also does not bar the present prosecution.

### A.  General Double Jeopardy Principles

¶21 Under the Fifth Amendment to the United States Constitution, "No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V; see also Wis. Const. art. I, § 8, cl. 1

13

("[N]o person for the same offense may be put twice in jeopardy of punishment . . . .").[6]

¶22 "Over 40 years ago, we held that two prosecutions are for the 'same offense,' and therefore violate the Double Jeopardy Clause, when the offenses in both prosecutions are 'identical in the law and in fact.'" Schultz, 390 Wis. 2d 570, ¶22 (quoting State v. Van Meter, 72 Wis. 2d 754, 758, 242 N.W.2d 206 (1976)). Two offenses are not "identical in law" where "each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). Further, offenses are not "identical in fact" where "allegation of substitute facts, all of which furnish the same legal element of the crime, . . . are either separated in time or are of a significantly different nature in fact." State v. Eisch, 96 Wis. 2d 25, 31, 291 N.W.2d 800 (1980) (footnote omitted).

¶23 "[A] motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." United States v. Jorn, 400 U.S. 470, 485 (1971) (footnote omitted). However, as the United States Supreme Court has held, "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a

---

[6] "Our tradition is to view these provisions as identical in scope and purpose." State v. Davidson, 2003 WI 89, ¶18, 263 Wis. 2d 145, 666 N.W.2d 1.

14

second trial after having succeeded in aborting the first on his own motion." Oregon v. Kennedy, 456 U.S. 667, 676 (1982). The circuit court in Killian's first prosecution made a factual finding that the prosecutor engaged in misconduct, a finding the State did not appeal and does not dispute here. Therefore, any offenses in the present prosecution that are identical in law and in fact to an offense in the prior prosecution are barred by double jeopardy.

¶24 Before we can analyze whether the offenses in this prosecution are identical in law and in fact to any offenses in the prior prosecution, we must first discern the scope of Killian's jeopardy during that prior prosecution. It is a "fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy." Serfass, 420 U.S. at 393. "The ambit of the constitutional bar to subsequent prosecution is coextensive with the scope of jeopardy created in the prior prosecution." 22A C.J.S. Crim. Proc. & Rts. of Accused § 618 (2023). If the offenses now prosecuted were not previously within the scope of Killian's jeopardy, then prosecuting those offenses in this case could not violate double jeopardy.

### B. Determining The Scope of Jeopardy.

¶25 Related to the scope of jeopardy is the method for determining when jeopardy attaches. See Crist v. Bretz, 437 U.S. 28, 38 (1978) (quoting Bretz v. Crist, 546 F.2d 1336, 1343 (9th Cir. 1976)) ("[T]he time when jeopardy attaches in a jury trial 'serves as the lynchpin for all double jeopardy

15

jurisprudence.'"). "[T]he conclusion that jeopardy has attached begins . . . the inquiry as to whether the Double Jeopardy Clause bars retrial." Illinois v. Somerville, 410 U.S. 458, 467 (1973). "Jeopardy attaches when a person has been placed on trial on a valid indictment or information before a court of competent jurisdiction, has been arraigned and has pleaded, and a jury has been impaneled and sworn, and charged with his deliverance." State v. B——, 173 Wis. 608, 617, 182 N.W. 474 (1921). In other words, jeopardy attaches when "an accused has been subjected to the risk of conviction." Serfass, 420 U.S. at 392. "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." Id. at 391-92. It follows that if a defendant was never subject to the "risk of a determination of guilt" of an offense, then jeopardy never attached for that offense, and it is not within the scope of jeopardy.[7]

¶26 In Serfass, the Supreme Court addressed whether jeopardy attached where charges for "willfully failing to report for and submit to induction into the Armed Forces" were

---

[7] We recognize that our decision in State v. Schultz contained a footnote stating, "The point at which jeopardy attaches has nothing to say about the actual scope of jeopardy." 2020 WI 24, ¶24 n.13, 390 Wis. 2d 570, 939 N.W.2d 519. However, that footnote merely explained that "[t]he time at which jeopardy attaches does not lock in the scope of jeopardy." Id. Though true the scope of jeopardy may change after the point in time when jeopardy initially attaches, this does not affect the method by which jeopardy must attach. Jeopardy may expand to include additional offenses the same way it initially attached: by placing the defendant at risk of a determination of guilt of an additional offense.

dismissed, prior to trial, because the "local board did not state adequate reasons for its refusal to reopen [the defendant's Selective Service] file." Id. at 379. The Court noted that it "has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.'" Id. at 388 (quoting Jorn, 400 U.S. at 479). Because the charges were earlier dismissed, "[t]he District Court was without power to make any determination regarding [defendant's] guilt or innocence." Id. at 389.

¶27 The Court also rejected the argument that dismissal "was the 'functional equivalent of an acquittal on the merits' and 'constructively jeopardy had attached.'" Id. at 390. Finding this argument "divorced from the procedural context," the court reemphasized that jeopardy attaches when "an accused has been subjected to the risk of conviction" by "a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.'" Id. at 391-92 (quoting Kepner v. United States, 195 U.S. 100, 133 (1904)).

¶28 The Supreme Court later doubled down on this rule in United States v. Felix, 503 U.S. 378, 385 (1992). The criminal defendant in Felix was first charged in the Western District of Missouri with "attempting to manufacture [methamphetamine] between August 26 and August 31, 1987," and the conduct underlying the charge was the defendant's "order[ing] precursor chemicals and equipment for the manufacture of methamphetamine

17

to be delivered to him at Joplin, Missouri." Id. at 380. At his trial, "the Government introduced evidence that [the defendant] had manufactured methamphetamine in Oklahoma earlier in 1987" in order to prove his "criminal intent with respect to the items delivered in Missouri." Id. at 381. He was convicted and later charged a second time in the Eastern District of Oklahoma. Id. at 381-82. The conduct underlying some of the charges in the Oklahoma case was the same conduct the government used as evidence of intent in the Missouri case. Id. at 382-83.

¶29 The Court found no double jeopardy violation, rejecting the notion "that if the Government offers in evidence in one prosecution acts of misconduct that might ultimately be charged as criminal offenses in a second prosecution, the latter prosecution is barred under the Double Jeopardy Clause." Id. at 386. The Court's "precedents hold that a mere overlap in proof between two prosecutions does not establish a double jeopardy violation" and have explicitly "disclaimed any intention of adopting a 'same evidence' test." Id. at 386 (citing Grady v. Corbin, 495 U.S. 508, 521 & n.12 (1990); Gavieres v. United States, 220 U.S. 338 (1911); Dowling v. United States, 493 U.S. 342 (1990)). Thus, the Court reaffirmed "the basic, yet important, principle that the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." Id. at 387.

¶30 Recently, we also weighed in on the question of how to determine the scope of a defendant's jeopardy. In Schultz, 390 Wis. 2d 570, the defendant was charged in a criminal complaint

18

with repeated sexual assault of a child during "late summer to early fall of 2012." Id., ¶5. No evidence at trial indicated any such acts of sexual assault occurred in October 2012, and the prosecutor in closing argument stated "the assaults started in July and ended in September 2012." Id., ¶¶8-9. The defendant was acquitted but later charged again, this time with sexual assault of a child under the age of 16 "on or about October 19, 2012." Id., ¶11. The issue was whether the scope of jeopardy in the trial included the offense of sexual assault "on or about October 19, 2012."

¶31 In line with the Supreme Court's decisions in Serfass and Felix, we focused our inquiry on "the defendant's actual exposure to jeopardy in a prior prosecution." Schultz, 390 Wis. 2d 570, ¶31. We decided "examining the entire record, including evidentiary facts adduced at trial," is relevant to discerning the scope of jeopardy in a prior trial. Id., ¶32. However, in reaching this conclusion, we also clarified that the focus of the inquiry remains on the defendant's "actual exposure to jeopardy," not on the parties' subjective understandings concerning the scope of jeopardy. Id., ¶¶24-25, 31. "Jeopardy," as we explained, includes "the actual danger to which a person is exposed, as opposed to the danger a person fears." Id., ¶31. It is not based "on the criminal defendant's fears, beliefs, or perceptions regarding his exposure in the first prosecution." Id. Furthermore, we declined the invitation to adopt the "reasonable person" test for discerning the scope of jeopardy espoused by the Second Circuit in United

19

States v. Olmeda, 461 F.3d 271 (2d Cir. 2006). Schultz, 390 Wis. 2d 570, ¶¶45-50. The proposed test was "whether 'a reasonable person familiar with the totality of the facts and circumstances would construe the initial indictment, at the time jeopardy attached in the first case, to cover the offense that is charged in the subsequent prosecution.'" Id., ¶46 (quoting Olmeda, 461 F.3d at 282). We rejected this test as unsupported in the case law and contrary to the language of the Fifth Amendment, which contemplates actual jeopardy, not perceived jeopardy. Id., ¶¶47-49.

¶32 Killian relies heavily on the "entire-record" analysis we used in Schultz. According to Killian, the present case violates double jeopardy because "[t]he evidence the State intended to submit in the preceding trial was sufficient to convict [Killian] of all the charges in the current case." He argues this evidence established jeopardy of conviction for "a broad range of conduct beyond the charging document" because "the State presented the conduct underlying the subsequent prosecution not as other act evidence in the first trial but with the intent to include the evidence as charges in an amendment." See Wis. Stat. § 971.29(2).

¶33 We do not read Schultz to be quite so broad. We agree with Killian, as we stated in Schultz, that "[i]t is the record as a whole . . . which provides the subsequent protection from double jeopardy, rather than just the indictment." Schultz, 390 Wis. 2d 570, ¶30 (quoting United States v. Roman, 728 F.2d 846, 854 (7th Cir. 1984)). However, when ascertaining the scope of

20

jeopardy, the analysis must nonetheless focus on the defendant's actual jeopardy——"the actual danger" of conviction. Id., ¶31; Serfass, 420 U.S. at 391-92.

¶34 Schultz framed the question, as applied to the facts of that case, as "whether the initial charge for repeated sexual assault of a child during the timeframe of 'late summer to early fall of 2012' includes the date charged in the second prosecution for sexual assault of a child 'on or about October 19, 2012.'" Schultz, 390 Wis. 2d 570, ¶33. To answer this question, "[w]e beg[a]n our analysis with the complaint charging [the defendant] in the initial prosecution." Id., ¶34. After analyzing the complaint's language, along with a police report incorporated by reference, we concluded the complaint "clearly identifie[d] [the defendant's] scope of jeopardy in the first prosecution at the time jeopardy attached." Id., ¶36. We then continued to examine the record at trial, but only "to see if anything suggest[ed] 'early fall' extended past mid-September to include October 19, 2012." Id., ¶37. The focus of the analysis was always on the defendant's actual jeopardy as established by the language in the criminal complaint. The trial record helped inform this analysis by providing evidence of what exactly the complaint meant by "early fall."

¶35 Schultz never suggested that the trial record, and the trial record alone, could expand the defendant's scope of jeopardy beyond the jeopardy created by a fair reading of the charging documents. After all, "[t]he defendant cannot be convicted," and the court is "without jurisdiction to convict"

21

the defendant, "of a crime for which he is not charged." State ex rel. Winnie v. Harris, 75 Wis. 2d 547, 553, 249 N.W.2d 791 (1977); see also Malaga v. United States, 57 F.2d 822, 825 (1st Cir. 1932) ("Even though the evidence warranted it, the respondent could not be convicted of an offense with which he was not charged."); State v. Rogers, 545 P.2d 930, 932 (Ariz. 1976) ("It is basic that a person cannot be convicted of an offense not charged against him by indictment or information."); In re Hess, 288 P.2d 5, 7 (Cal. 1955) ("A person cannot be convicted of an offense . . . not charged against him by indictment or information, whether or not there was evidence at his trial to show that he had committed that offense."). Were we to conclude jeopardy could attach based on "[t]he evidence the State intended to submit in the preceding trial" alone, this would contravene the Supreme Court's holding in Felix "that a mere overlap in proof between two prosecutions does not establish a double jeopardy violation."[8] 503 U.S. at 386.

¶36 The fact that the information may be amended to conform to the evidence presented at trial does not affect our analysis. Under Wis. Stat. § 971.29(2),

> At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed

---

[8] If we ascribed a broader meaning to our holding in Schultz, 390 Wis. 2d 570, it would bar subsequent prosecutions based simply on evidence related to uncharged crimes. Schultz cannot be interpreted to bar a later prosecution based just on that evidence.

22

amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial.

But before the information may be amended to conform to the evidence, such evidence must have been admitted at trial. Evidence in a criminal trial is inadmissible unless it is relevant to the defendant's guilt or innocence of a crime charged at the time the evidence is introduced. See Wis. Stat. § 904.02 ("Evidence which is not relevant is not admissible."); cf. State v. Alsteen, 108 Wis. 2d 723, 731, 324 N.W.2d 426 (1982) (stating evidence "must be relevant to an issue in the case to be admissible"). If evidence is relevant and therefore admitted, then the defendant is in jeopardy insofar as that evidence is being used to prove the charged offense. See Felix, 503 U.S. at 379. Even if that same evidence could be relevant to proving some other offense, jeopardy for that offense does not attach until the defendant faces the "risk of a determination of guilt" with regard to that offense. Serfass, 420 U.S. at 391-92. Until the Information is actually amended, there exists no such risk, and therefore no jeopardy.

¶37 Likewise, we disagree with Killian that a prosecutor's introducing evidence merely with intent to bring additional charges can expand the scope of jeopardy. We similarly rejected analyzing the parties' states of mind as a method for discerning the scope of jeopardy in Schultz. See 390 Wis. 2d 570, ¶¶24-25, 31, 49. Just like the proposed tests in Schultz, Killian's proposed intent-based test runs contrary to the Fifth Amendment's requirement of actual jeopardy. Regardless of the

23

prosecutor's intentions, the Information could not be amended without leave of the court. Wis. Stat. § 971.29(2).

¶38 We therefore hold that, where a trial ends in a mistrial,[9] the defendant's scope of jeopardy consists of those offenses for which the defendant faced actual danger of conviction, meaning the defendant was exposed to the "risk of a determination of guilt" regarding those offenses.[10] Serfass, 420 U.S. at 391-92. The inquiry should focus on the charging documents, but the entire record may be examined if necessary to confirm the scope of jeopardy as established by those charging documents. Schultz, 390 Wis. 2d 570, ¶¶33-40. "[M]ere overlap in proof between two prosecutions does not establish a double jeopardy violation," Felix, 503 U.S. at 386, nor does the prosecutor's intent. The inquiry must always focus on "the defendant's actual exposure to jeopardy in a prior prosecution." Schultz, 390 Wis. 2d 570, ¶31.

C. Whether Killian Was Twice Put In Jeopardy.

---

[9] "[F]or purposes of barring a future prosecution, it is the judgment and not the indictment alone which acts as a bar, and the entire record may be considered in evaluating a subsequent claim of double jeopardy." Schultz, 390 Wis. 2d 570, ¶30 (quoting United States v. Hamilton, 992 F.2d 1126, 1130 (10th Cir. 1993)).

[10] This "risk" refers to the possibility that a jury might find the defendant guilty of the crime charged. It does not refer to the possibility that a jury might consider conduct which could constitute an otherwise uncharged offense. The Constitution requires that there be actual as opposed to hypothetical jeopardy. Id., ¶31.

24

¶39 We now turn to the issue of whether Killian's second prosecution violates double jeopardy. We conclude it does not.

¶40 Killian argues he was in jeopardy with regard to certain offenses against Britney because, "[i]n the State's opening in the first trial, the State explained it would present evidence regarding 'a course of conduct,' including the defendant 'touching her inappropriately' and 'rub[bing] [his penis] on her." Killian also points to the prosecutor's statement to the circuit court that he could present evidence of "a breast rub . . . alleged humping, penis rubbing . . . also a vaginal rub." "With respect to Ashley," Killian argues he was in jeopardy because "the State explained to the empaneled jury, the evidence will show that [Killian] sexually assaulted Ashley from when she was about 6 years old until she was 17," from 1988 to 1999. According to Killian, the prosecutor's attempts to introduce this evidence, combined with his intent to amend the Information, constituted an "active pursuit of convictions in front of an empaneled jury [which] created the actual jeopardy."

¶41 We disagree. A review of the entire record, with a focus on Killian's actual exposure to jeopardy, reveals a far more limited scope of jeopardy than Killian contends. Killian was never in jeopardy of being convicted for these offenses because he was never exposed to a risk of a determination of guilt regarding these offenses.

¶42 The entire record demonstrates that the only alleged offense against Britney for which Killian faced a possible determination of guilt was the allegation that he grabbed

25

Britney's buttocks. The Amended Information included one count of sexually assaulting Britney "on or between January, 2014 to August, 2014." The probable cause section of the original complaint alleged Killian "grabbed her buttocks" in that time period. During the October 5, 2016 motion hearing, the prosecutor confirmed that the State was not alleging any acts of sexual assault beyond touching Britney's buttocks, and the court issued an order excluding evidence of other acts of sexual assault against Britney. While discussing the Amended Information on the first day of trial, the circuit court further confirmed with the prosecutor that the State was "not alleging there were additional things that happened." Any other acts of sexual assault, the court emphasized, "were required to have been addressed and they were not addressed at all." The court repeated this ruling before Britney's testimony, and it granted a mistrial when the prosecutor violated that ruling. The circuit court made it abundantly clear that Killian was not at risk of being convicted for any act of sexual assault against Britney other than grabbing her buttocks.

¶43 As for the alleged offenses against Ashley, Killian was in jeopardy of being convicted for committing repeated sexual assault "from April, 1994 through December, 1999." The court denied the State's motion to include a count for incest, meaning that offense was never before the jury. Though the prosecutor in his opening statement told the jury Killian "started molesting [Ashley] since she was about 6 or 7 years old [1988-89] and didn't stop until she was about 17 [1999]," this

26

clearly goes beyond the date range in the Information. In contrast with the Information in Schultz, there is no reading of "April, 1994 through December, 1999" that also includes 1988 to 1993. The only time period the jury could consider was that listed in the Information: "from April, 1994 through December, 1999."

¶44 Furthermore, the prosecutor's stated intention to amend the Information and add more charges at the close of evidence did not expand the scope of Killian's jeopardy. The prosecutor's intent alone was insufficient to put Killian at risk of a determination of guilt. The jury would have had no ability find Killian guilty of any additional offenses unless and until that amendment took place. No such amendment ever took place, so jeopardy never attached.

¶45 Accordingly, we conclude the scope of Killian's jeopardy in his trial included the following offenses: sexually assaulting Britney by grabbing her buttocks "on or between January, 2014 to August 18, 2014" contrary to Wis. Stat. § 948.02, and repeated sexual assault of Ashley "from April, 1994 through December, 1999" contrary to Wis. Stat. § 948.025.

¶46 Having ascertained the scope of Killian's jeopardy in his first prosecution, we proceed to the question of whether Killian's jeopardy in his second prosecution is identical in law and in fact. To repeat, "two offenses are identical in law if one offense does not require proof of any fact in addition to those which must be proved for the other offense." State v. Ziegler, 2012 WI 73, ¶60, 342 Wis. 2d 256, 816 N.W.2d 238.

27

Offenses "are not identical in fact if the acts allegedly committed are sufficiently different in fact to demonstrate that separate crimes have been committed." Id.

¶47 In the present prosecution, counts 3 and 5 through 9 are not identical in law to an offense in Killian's first prosecution. Those counts allege Killian committed incest against Ashley contrary to Wis. Stat. § 948.06. To prove incest, the State must show the defendant "kn[ew] [the child victim] is related, either by blood or adoption, and the child is related in a degree of kinship closer than 2nd cousin." § 948.06. The crime of repeated sexual assault of a child under Wis. Stat. § 948.025, charged in the first case, contains no similar element. The crime of incest also requires proof that the victim "ha[d] not attained the age of 18 years." Wis. Stat. § 948.01(1) (defining "child"). In contrast, repeated sexual assault of a child requires proof that the victim "ha[d] not attained the age of 16 years." Wis. Stat. §§ 948.025, 948.02. The statute also requires proof of "3 or more violations." Id. Counts 3 and 5 through 9 charging Killian with committing incest against Ashley therefore do not violate double jeopardy because each offense "require[s] proof of a[] fact in addition to those which must be proved for the other offense." Ziegler, 342 Wis. 2d 256, ¶60; see also State v. Swanson, No. 2015AP1521-CR, unpublished slip op., ¶42 (Wis. Ct. App. Mar. 7, 2017) (concluding Wis. Stat. §§ 948.06 and 948.025 are not identical in law under the Blockburger test).

28

¶48 Counts 1 through 5 do not violate double jeopardy because they are not identical in fact to an offense in Killian's first prosecution. Counts 1 through 5, which allege offenses against Ashley, are factually different because they cover different timeframes than the offense in Killian's first prosecution. Whereas the timeframe in the first prosecution was "April, 1994 through December, 1999," counts 1 through 5 allege various offenses "in or around" 1990 to 1993. This precedes the timeframe for the offenses against Ashley prosecuted in the previous case, making these counts not identical in fact.

¶49 Count 10, the only count alleging an offense against Britney, is also not identical in fact to an offense in the previous case. The State prosecuted Killian in the first case for grabbing Britney's buttocks "on or between January, 2014 to August 18, 2014." Count 10 alleges Killian committed repeated acts of sexual assault against Britney "in or around June 2012, and no later than August 17, 2014." Though there is some overlap in the time period and the complaint's probable cause section alleges Killian "grabbed [Britney's] butt," the complaint also alleges other acts of sexual assault. It alleges Killian grabbed Britney's buttocks five times and that only one of these times was on August 18, 2014. It also alleges Killian "touched her 'boobies,'" "hump[ed]" her, and "touched her 'private part.'" These acts "are significantly different in nature, involving different methods of intrusion and contact." Ziegler, 342 Wis. 2d 256, ¶73. Count 10 is therefore not identical in fact to an offense prosecuted in the previous case,

29

and it does not violate double jeopardy to the extent it alleges acts of sexual assault other than grabbing Britney's buttocks "on or between January, 2014 to August 18, 2014."

¶50 Because no count in the present prosecution is identical both in law and in fact with an offense charged in Killian's previous prosecution, the present case is not a prosecution for the same offense and does not violate Killian's right against double jeopardy.

### D.  Issue Preclusion

¶51 Finally, Killian raises issue preclusion as a potential bar to prosecution in this case.  Specifically, Killian argues that issue preclusion, as "ro[o]ted in the Double Jeopardy Clause," bars the present prosecution because "the trials would be identical, but for the State seeking to bolster its case."  He also argues that issue preclusion prevents the State from bringing more charges because the circuit court's order in the first case "clearly ruled that the State could not bring these charges" and the State did not appeal that order.

¶52 Killian's first argument relies largely on the United States Supreme Court's decision in Ashe, 397 U.S. 436.  The defendant in Ashe was charged with robbing one of six men playing a poker game in a residential basement.  Id. at 437. "The trial judge instructed the jury that if it found that the [defendant] was one of the participants in the armed robbery . . . he was guilty under the law even if he had not personally robbed [the victim]."  Id. at 439.  The jury found the defendant not guilty.  Id.  "Six weeks later the [defendant]

30

was brought to trial again, this time for the robbery of another participant in the poker game . . . ." Id. The Court addressed whether issue preclusion "is a part of the Fifth Amendment's guarantee against double jeopardy" and therefore "no longer a matter to be left for state court determination within the broad bounds of 'fundamental fairness.'" Id. at 442-43. The Court described the doctrine as "mean[ing] simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[11] Id. at 443. The Court concluded issue preclusion barred the second prosecution because the "jury determined by its verdict that the [defendant] was not one of the robbers." Id. at 446.

¶53 The Supreme Court has recently described Ashe as imposing a rigorous standard:

> [Ashe's] test is a demanding one. Ashe forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial. A second trial "is not precluded simply because it is unlikely——or even very unlikely——that the original jury acquitted without finding the fact in question." To say that the second trial is tantamount to a trial of the same offense as the first and thus forbidden by the Double Jeopardy Clause, we must be able to say that "it would have been irrational for the jury" in the first trial to acquit

---

[11] Ashe used the term "collateral estoppel" to describe this doctrine. 397 U.S. 436 (1970). However, the Supreme Court "has [since] observed, 'issue preclusion' is the more descriptive term" as opposed to "collateral estoppel." Bravo-Fernandez v. United States, 580 U.S. 5, 7 n.1 (2016).

31

without finding in the defendant's favor on a fact
essential to a conviction in the second.

Currier v. Virginia, 585 U.S. ___, 138 S. Ct. 2144, 2150 (2018) (citations omitted); see also Bravo-Fernandez v. United States, 580 U.S. 5, 12 (2016) (describing the inquiry as "what a jury in a previous trial necessarily decided"). We have likewise explained that issue preclusion applies to "an issue of ultimate fact that is determined by a valid and full judgment." State v. Vassos, 218 Wis. 2d 330, 343, 579 N.W.2d 35 (1998); Canon, 241 Wis. 2d 164, ¶13 ("[I]ssue preclusion . . . is a doctrine to prevent prosecutorial misconduct and give finality to judicial determinations made in one criminal transaction . . . ."). We therefore conclude that a valid judicial determination of ultimate fact is necessary for issue preclusion to apply under Ashe. Because the jury in Killian's trial did not reach a verdict, the doctrine is inapplicable to this case.[12]

---

[12] Killian argues this conclusion "allows a prosecutor, upon believing the trial is going badly, to intentionally goad the defense into moving for a mistrial and then remain free from the perils of issue preclusion, which is exactly what happened in this case." This argument is based on an unknowable, hypothetical verdict the jury might have issued, and it assumes all charges relating to the same conduct must be brought in the same prosecution.

> The collateral-estoppel effect attributed to the Double Jeopardy Clause, may bar a later prosecution for a separate offense where the Government has lost an earlier prosecution involving the same facts. But this does not establish that the Government "must . . . bring its prosecutions . . . together." It is entirely free to bring them separately . . . .

United States v. Dixon, 509 U.S. 688, 705 (1993).

32

¶54 Killian's second argument——that the circuit court's order dismissing the first case with prejudice bars the present prosecution——fails in a similar vein. "The [common law] doctrine of issue preclusion . . . is designed to limit the relitigation of issues that have been actually litigated in a previous action." Aldrich, 341 Wis. 2d 36, ¶88. "An issue is 'actually litigated' when it is 'properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" Dostal v. Strand, 2023 WI 6, ¶24, 405 Wis. 2d 572, 984 N.W.2d 382 (quoting Randall v. Felt, 2002 WI App 157, ¶9, 256 Wis. 2d 563, 647 N.W.2d 373).

¶55 In the circuit court's order following Killian's trial, the court described the issue as "whether the Fifth Amendment's protection against double jeopardy bars the retrial of [Killian] because of prosecutorial overreaching in this case." The court stated its findings as follows:

> The Court finds that the prosecutor's actions were intentional and the record shows that he knew his actions would be prejudicial to the defendant. The Court finds also that the prosecutor's conduct was designed to create another chance to convict, and was an act done so as to allow the State another "kick at the cat" – a chance to prepare more thoroughly and with a better understanding of the issues, a chance to file different motions and obtain more favorable pretrial rulings, and a chance to add more charges and incriminating evidence into the record in the hopes of solidifying the State's chances of conviction.

The court then ordered "that the State is barred from retrial in this matter due to prosecutorial overreaching" (emphasis added). The circuit court's order addressed the issue of prosecutorial

33

overreach. Nowhere did the circuit court analyze the scope of Killian's jeopardy in his trial. The one question before the circuit court, and the court's one ruling, concerned whether the prosecutor engaged in overreach such that double jeopardy barred retrial "in th[at] matter." The circuit court never determined the scope of Killian's jeopardy in his trial. Accordingly, the issue was not actually litigated, and common law issue preclusion does not apply.

## IV. CONCLUSION

¶56 We conclude that Killian's previous trial does not bar the State from prosecuting the present case because the scope of Killian's jeopardy in his trial did not include the offenses with which he is now charged. The scope of jeopardy is established by "the defendant's actual exposure to jeopardy in a prior prosecution." Schultz, 390 Wis. 2d 570, ¶31. This requires that the defendant faced a "risk of a determination of guilt" regarding a particular offense. Serfass, 420 U.S. at 391-92. Killian was never exposed to the risk of conviction for the offenses charged in the present case. As a result, the offenses prosecuted in Killian's trial are not identical in law and in fact to the offenses charged in this case, so double jeopardy does not bar the present prosecution.

¶57 We also conclude that issue preclusion under the Double Jeopardy Clause and common law issue preclusion do not bar the present prosecution. Issue preclusion under the Double Jeopardy Clause requires a valid judicial determination of ultimate fact, and none exists in this case because Killian's

34

trial ended in a mistrial. See Ashe, 397 U.S. 436 (1970). Common law issue preclusion also does not bar this prosecution. The circuit court's order dismissing with prejudice the criminal complaint in the first case did not decide the scope of Killian's jeopardy. Therefore, that issue was never "actually litigated," and issue preclusion does not bar the present prosecution. See Aldrich, 341 Wis. 2d 36, ¶88.

¶58 We therefore reverse the court of appeals and remand to the circuit court to consider Killian's unresolved argument regarding prosecutorial vindictiveness.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶59 ANN WALSH BRADLEY, J. *(dissenting).* As pretrial rulings unfolded and trial testimony was introduced, the woefully unprepared State realized that things were looking bleak. So instead of allowing the jury to perform its function, the prosecutor intentionally induced a mistrial in an attempt to later refile charges against James Killian.

¶60 Importantly, the circuit court made a finding that the "trial was going poorly" for the prosecutor and that "[t]he prosecutor knew that if he retried the case, he might fare better and the defendant could face more ominous charges . . . ." It further found that "the prosecutor's actions were intentional" and that his "conduct was designed to create another chance to convict, and was an act done so as to allow the State another 'kick at the cat.'"

¶61 The circuit court could see right through the State's gamesmanship. According to the court, the ploy was designed to afford "a chance to prepare more thoroughly and with a better understanding of the issues, a chance to file different motions and obtain more favorable pretrial rulings, and a chance to add more charges and incriminating evidence into the record in the hopes of solidifying the State's chances of conviction."

¶62 Attempting to circumvent these findings, the majority opinion rewards the State's scheme, giving it just what it sought through its egregious conduct. In the majority's view, double jeopardy does not bar retrial "because the scope of Killian's jeopardy in his trial did not include the offenses with which he is now charged." Majority op., ¶3. In effect,

1

the majority's decision sends a direct signal to prosecutors who are losing at trial: if you want a do-over, consider throwing the trial.

¶63 The majority errs in two primary ways. First, it sidesteps the circuit court's detailed factual findings, disregarding the prosecutor's clear intent. Second, by focusing singularly on the charging documents in determining the scope of Killian's jeopardy, rather than examining the record as a whole, the majority employs an analysis which this court explicitly rejected in a recent case. See State v. Schultz, 2020 WI 24, 390 Wis. 2d 570, 939 N.W.2d 519.

¶64 Under a proper application of Schultz, I conclude that jeopardy attaches where the prosecutor's desire to amend the information based on the evidence at trial is clearly manifest in the record and where the prosecutor purposely induced a mistrial with the intent to later refile charges. Any other result would allow the State to reap a windfall from its intentional wrongdoing.

¶65 Because I would not lend judicial imprimatur to the State's gambit in this case, I respectfully dissent.

I

¶66 Killian was charged with sexual assaults of two minors, referred to as Britney and Ashley.[1] Majority op., ¶6. The complaint regarding Britney charged Killian with one count of first-degree sexual assault of a child[2] and alleged a single

---

[1] "Britney" and "Ashley" are pseudonyms. See Wis. Stat. (Rule) § 809.86(4).

[2] Wis. Stat. § 948.02.

2

assaultive act——that Killian "laid beside [Britney] and grabbed her buttocks." Id.

¶67 About a year after the complaint regarding Britney was filed, the State filed an additional complaint against Killian concerning acts against Ashley. Id., ¶7. In this second complaint, the State charged Killian with repeated sexual assault of the same child,[3] alleging that Killian sexually assaulted Ashley from "April 1994 through December 1999." Id.

¶68 After the cases were joined for trial, Killian brought a motion to exclude other-acts evidence, while the State sought to admit such evidence. Id., ¶8. Ultimately, the circuit court denied the State's motion to admit other-acts evidence as to other instances of assault against Britney.[4] Id.

¶69 As trial approached, the State tried to add additional charges by amending the information. Id., ¶9. On the day of trial, the circuit court denied this motion, describing the addition of new charges at such a late date as prejudicial. Id., ¶10. As the parties and the circuit court discussed this motion, the prosecutor confirmed that Killian was being charged with "one sole act" with regard to Britney. Id., ¶11. But he

---

[3] Wis. Stat. § 948.025.

[4] The circuit court allowed the State to present evidence of "grooming" behavior, but it did not allow the State to present evidence of assaultive behavior other than Killian grabbing Britney's buttocks as alleged in the complaint. Majority op., ¶8. Additionally, the circuit court granted the State's motion to admit evidence of sexual assaults against Ashley going back to 1988 to demonstrate Killian's "motive, intent, preparation, absence of mistake or accident, and plan." Id.

3

reiterated his desire to later amend the information "if more acts are disclosed at trial." Id.

¶70 Despite the circuit court's admonition, from his opening statement onward, the prosecutor continually described other instances of alleged sexual assault committed by Killian against Britney. Id., ¶13. Prior to Britney taking the stand, the prosecutor yet again referenced the possibility that the information could be amended to conform with the proof offered and stated that "[a]nything could happen when she testifies." Id., ¶14. As part of this discussion, the circuit court made clear that a mistrial was a distinct possibility if any excluded other-acts evidence surfaced. Id.

¶71 Britney took the stand and the prosecutor quickly elicited such testimony. Id., ¶15. Defense counsel objected and moved for a mistrial, which the circuit court granted. Id. The circuit court later determined that the prosecutor's actions were intentional, with the object being to retry the defendant. Id.

¶72 Consistent with that object, the State subsequently filed a new criminal complaint, this time charging Killian with 10 counts, relying on the other-acts evidence that was excluded from the initial trial. Id., ¶16. Nine of these counts related to Ashley, and included three counts of first-degree sexual assault of a child and six counts of incest with a child.[5] Id. One count related to Britney, and charged Killian with repeated sexual assault of the same child. Id.

_____

[5] Wis. Stat. § 948.06(1).

4

¶73 Killian moved to dismiss the new complaint on double jeopardy grounds. Id., ¶17. The circuit court agreed with Killian, and the court of appeals affirmed. It concluded that "the circuit court properly considered the entire record of the first prosecution to determine whether Killian was in jeopardy for the offenses now charged." State v. Killian, 2022 WI App 43, ¶4, 404 Wis. 2d 451, 979 N.W.2d 569. Reviewing the record, the court of appeals concluded that "Killian was, in fact, in jeopardy of being convicted of the offenses now charged" in the second complaint. Id.

¶74 The State petitioned for review, and the majority now reverses a unanimous decision of the court of appeals.

## II

### A

¶75 The majority concludes that "Killian was never exposed to the risk of conviction for the offenses charged in the present case." Majority op., ¶3. In the majority's view, "Killian's previous trial does not bar the State from prosecuting the present case because the scope of Killian's jeopardy in his trial did not include the offenses with which he is now charged." Id.

¶76 The double jeopardy clause provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. At its core, it recognizes the State's power and serves as a check on that power:

> The underlying idea, one that is deeply ingrained in
> at least the Anglo-American system of jurisprudence,

5

> is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Green v. United States, 355 U.S. 184, 187-88 (1957).

¶77 This clause serves various purposes. It protects a defendant from multiple trials and punishments for the same offense, preserves the finality and integrity of judgments, bars the government from a second chance to supply evidence it failed to provide in the first proceeding, and protects a defendant's right to have the trial completed by a particular tribunal. State v. Martin, 121 Wis. 2d 670, 675, 360 N.W.2d 43 (1985).

¶78 However, the double jeopardy bar does not apply in all situations. When a defendant requests a mistrial, and that request is granted, the general rule is that the double jeopardy clause does not bar a retrial. State v. Hill, 2000 WI App 259, ¶11, 240 Wis. 2d 1, 622 N.W.2d 34 (citing State v. Copening, 100 Wis. 2d 700, 709, 303 N.W.2d 821 (1981)). In such a situation, the defendant exercises control over the mistrial decision and in effect chooses to be tried by a different tribunal. Id.

¶79 But this rule is not absolute. Where governmental conduct is intended to goad the defendant into moving for a mistrial, double jeopardy can be raised as a bar to a second trial even after the defendant successfully ends the first. Oregon v. Kennedy, 456 U.S. 667, 675-76 (1982).

¶80 Here, the prosecutor plainly "goaded" the defendant into moving for a mistrial. The circuit court made such a

6

determination, supported by 21 factual findings. It observed that the prosecutor clearly knew that things were not going his way:

- "The prosecutor had multiple reasons to believe the trial was going poorly even before the trial started (medical subpoenas, excluded expert, excluded forensic interview, improperly crafted proposal to settle) . . . ."

The circuit court further found unbelievable the prosecutor's claim that he unintentionally elicited the prohibited testimony:

- "The prosecutor claimed the error was an unintentional mishap yet the prosecutor had clearly educated himself that the only way he would be barred from retrial if a mistrial was declared was if there was prosecutorial overreaching and he discussed this research with the defense team moments before the child was called to testify. There would be no other purpose to call in the defense counsel over lunch other than to lay out what he intended to do if they objected to the introduction and a mistrial was declared."

It also noted that the prosecutor was aware that another trial may bring both additional charges and a better chance of conviction:

- "The prosecutor knew that if he retried the case, he might fare better and the defendant could face more ominous charges 'because if she were to testify and

7

she goes and tells her story, Mr. Killian is facing more charges.'"

Finally, the circuit court observed the State's failure to prepare and the subsequent scramble to cover it up:

- "The State was not prepared for trial and realized only the week prior to trial that there were a series of sexual assaults alleged by the child. It then requested leave to amend to include a date range, hoping to get the entire set of acts included, by sidestepping the prior ruling on [other-acts evidence] to which it had previously failed to object."

¶81 Accordingly, the circuit court found that "the prosecutor's actions were intentional and the record shows that he knew his actions would be prejudicial to the defendant." It continued: "The Court finds also that the prosecutor's conduct was designed to create another chance to convict, and was an act done so as to allow the State another 'kick at the cat' . . . ." The circuit court thus determined that "the State is barred from retrial in this matter due to prosecutorial overreaching."

¶82 The majority sidesteps the circuit court's findings. It asserts that "Killian was never exposed to the risk of conviction for the offenses charged in the present case" and that "the offenses prosecuted in Killian's trial are not identical in law and in fact to the offenses charged in this case." Majority op., ¶3.

¶83 This "identical in law and in fact" formulation arises from Blockburger v. United States, 284 U.S. 299 (1932). In

8

*Blockburger*, the United States Supreme Court determined that "where the same act constitutes a violation of two distinct statutory provisions, the test under the double jeopardy clause is whether each provision requires proof of a fact which the other does not." State v. Lechner, 217 Wis. 2d 392, 405, 576 N.W.2d 912 (1998). "Under this test, two offenses are different in law if each statutory crime requires for conviction proof of an element which the other does not require." Id. Offenses are not identical in fact if a conviction for each offense requires proof of an additional fact that conviction for the other offenses does not, or if they are different in nature or separated in time. Schultz, 390 Wis. 2d 570, ¶22. This test is rather straightforward to apply, but a particular aspect of Wisconsin law illustrates that the application of the test is not without nuance.

¶84 In Wisconsin the State may move to amend the information to conform to the evidence produced at trial. Wis. Stat. § 971.29(2).[6] Although the statute requires that any such amendment not prejudice the defendant, the State's ability to amend the information is fairly broad. "When an amendment to the charging document does not change the crime charged, and

---

[6] Wisconsin Stat. § 971.29(2) provides:

At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial.

9

when the alleged offense is the same and results from the same transaction, there is no prejudice to the defendant." State v. DeRango, 229 Wis. 2d 1, 26, 599 N.W.2d 27 (Ct. App. 1999). But this does not mean that an amendment cannot vastly expand the jeopardy to which a defendant is subject. Indeed, precedent indicates that amendment can even result in additional counts that increase the maximum penalty a defendant may face. State v. Wickstrom, 118 Wis. 2d 339, 349, 348 N.W.2d 183 (Ct. App. 1984).

¶85 What this means in practical terms is that in some cases the charge or factual circumstance that is sent to the jury for determination may be quite different from the charge or factual circumstance set forth in the information at the beginning of the trial. This is a key point: the charging document does not reflect the definitive final charge. It is subject to amendment, meaning that the jeopardy to which a defendant is subject cannot be defined strictly by looking at the charging document. See Schultz, 390 Wis. 2d 570, ¶30, (citing United States v. Hamilton, 992 F.2d 1126, 1130 (10th Cir. 1993) ("[F]or purposes of barring a future prosecution, it is the judgment and not the indictment alone which acts as a bar, and the entire record may be considered in evaluating a subsequent claim of double jeopardy.").

B

¶86 In its laser-focus on the charging documents, the majority misapplies our recent decision in State v. Schultz, 390 Wis. 2d 570. In Schultz, the question before the court was

10

whether a prosecution for a sexual assault "on or about October 19, 2012" was barred by double jeopardy when the defendant had been previously acquitted for sexual assault in "late summer to early fall of 2012." In framing the analysis, the Schultz court concluded that we must examine "the entire record, including evidentiary facts adduced at trial, in ascertaining whether a defendant's double jeopardy rights have been violated by a second prosecution." Id., ¶32. It emphasized that "it is the record in its entirety that reveals the scope of jeopardy and protects a defendant against a subsequent prosecution for the same crime." Id.

¶87 In applying these principles to the facts before it, the Schultz court rejected an approach that would merely compare the charging documents to determine the scope of jeopardy. It explained that such an approach would insufficiently protect the defendant's double jeopardy rights and that we must examine the record to determine whether any evidence supporting the charges in the second case was introduced in the first:

> Limiting our review to the complaint . . . would not protect the defendant against double jeopardy if the State introduced evidence of a sexual assault occurring "on or about October 19" after jeopardy attached. In order to ascertain whether the defendant was exposed to double jeopardy in the second prosecution, we examine the entire record of proceedings in the first case to see if any evidence of a sexual assault occurring "on or about October 19" was introduced.

Id., ¶37.[7]

---

[7] Setting forth the background that underlies this conclusion, the Schultz court wrote:

¶88 This passage from Schultz explicitly indicates that review of only the complaint fails to protect the defendant's double jeopardy rights if the State introduces evidence of a sexual assault outside the charging period. Id. ("Limiting our review to the complaint . . . would not protect the defendant against double jeopardy if the State introduced evidence of a sexual assault occurring 'on or about October 19' after jeopardy attached."). Such a scenario is just what we have in the present case. Accordingly, we must look to the "entire record," and not merely compare charging documents. Yet despite the Schultz court's admonition, the charging document is where the majority's singular focus lies. See majority op., ¶35.

¶89 The entire record here points in one direction——that the prosecutor repeatedly and consistently sought to amend the information to add additional charges. Had this clear goal of the prosecution come to pass, Killian would have faced the possibility of conviction on those additional charges.

---

Even though the incorporated and attached police report renders the complaint unambiguous, we also review the record of the first trial to see if anything suggests "early fall" extended past mid-September to include October 19, 2012. We do so in order to safeguard the defendant's constitutional right against double jeopardy. The facts alleged under the second complaint——a sexual assault "on or about October 19"——would not, if proven, support a conviction in the first prosecution. The complaint in the first prosecution alleged repeated sexual assaults during "late summer to early fall[,]" which the attached and incorporated police report clarified to have concluded in early to mid-September.

State v. Schultz, 2020 WI 24, ¶37, 390 Wis. 2d 570, 939 N.W.2d 519.

12

¶90 The majority focuses on "actual jeopardy" rather than "perceived jeopardy." See, e.g., majority op., ¶31. But this focus fails to recognize, as the United States Supreme Court has, that the concept of "potential" is inherent in the double jeopardy clause. Price v. Georgia, 398 U.S. 323, 326 (1970) ("The 'twice put in jeopardy' language of the Constitution . . . relates to a potential, i.e., the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried.").

¶91 In order to account for the State's ability to amend the information to conform to the evidence at trial, I conclude that in a situation as here, a straightforward application of Schultz indicates that where the prosecutor's desire to amend the information based on the evidence at trial is clearly manifest in the record and where the prosecutor purposely induced a mistrial with the intent to later refile charges, jeopardy attaches.

¶92 The series of events with which we are confronted here is not common. It is a thankfully rare occurrence that a prosecutor will purposely induce a mistrial with the intent to later refile charges. But in such a situation, examination of the entire record dictates that a determination that jeopardy attaches is appropriate and even necessary to protect a defendant's double jeopardy rights.

¶93 By concluding that Killian's double jeopardy rights were not violated, the majority rewards the State's gamesmanship. The State purposely induced a mistrial with the

13

intent to get a chance to try again after preparing more thoroughly. And it gets exactly what it wanted. This simple fact alone should cause any fair-minded reader to pause. Unlike the majority opinion, the application of our precedent presented in this dissent would not countenance such an egregious manipulation of the judicial machinery.

¶94 Contrary to the majority's assertions, Killian's first trial placed him in jeopardy of conviction for the crimes charged in the second complaint with regard to both Britney and Ashley. The prosecutor was clear in his intent to seek amendment of the information to conform with the evidence——evidence that he hoped would contain proof of additional acts of sexual assault against Britney and incest against Ashley. No speculation is necessary to guess at the charges the prosecutor would have sought.

¶95 The intention to amend the information was clear and manifest in the record. As the circuit court found, "[t]here were numerous Informations filed, with various charges, changing dates, and changing penalties up to and during the trial itself." For example, several days prior to trial, the prosecutor filed an affidavit in support of a motion to amend the information to allege a series of sexual assaults over a period of time. Then, on the day of trial, he again referenced amending the information in what the circuit court termed "an attempt to back door the prior ruling to which he failed [to] object." And immediately before Britney testified, the prosecutor raised the possibility that "if she were to testify

14

and she goes and tells her story, Mr. Killian is facing more charges." The prosecutor's repeated efforts and stated intent to amend the information are manifest in this record.

¶96 Also clear from the record is the prosecutor's intent to induce a mistrial. The circuit court found that the prosecutor acted with specific intent to cause a mistrial and to prejudice the defendant——findings which are supported by ample evidence in the record. For these reasons, the entire record indicates that jeopardy attached and double jeopardy bars retrial.

¶97 For the foregoing reasons, I respectfully dissent.

¶98 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this dissent.

15